820 P.2d 1206

**J.R. SIMPLOT COMPANY, INC., and subsidiaries, including Simplot Chemical Company, Ltd., Plaintiff–Appellant,**

v.

**IDAHO STATE TAX COMMISSION, Defendant–Respondent.**

No. 18058.

Supreme Court of Idaho,
Boise March 1990 Term.

Oct. 1, 1991.

Rehearing Denied Dec. 31, 1991.

James N. Gardner of Portland, Or., and Davis, Wright & Tremaine, Boise, for plaintiff-appellant. James N. Gardner argued.

Hawley Troxell Ennis & Hawley, Boise, for amici. Robert S. Erickson argued.

Larry EchoHawk, Atty. Gen., Lenard L. Wittlake, Deputy Atty. Gen., Boise, for defendant-respondent. Lenard L. Wittlake argued.

BOYLE, Justice.

In this case we are called upon to determine whether the world-wide unitary income of a foreign subsidiary, which is not "taxable income" under Internal Revenue Code § 63, may be combined with the unitary business income of a domestic corporation and its subsidiaries in order to compute the apportionable amount of "Idaho taxable income." We hold that foreign source income may not be included in Idaho taxable income for purposes of I.C. § 63–3027 unless it also included in the definition of taxable income under the provisions of I.C. § 63–3022. Therefore we reverse.

## I.

This case arises out of two disputed notices of tax deficiency issued by the Idaho State Tax Commission ("Tax Commission") against J.R. Simplot Company, Inc. and its U.S. subsidiaries ("Simplot"). The amount of the deficiency was paid by Simplot and a complaint was filed in district court requesting judicial review of the Tax Commission's deficiency determination and requesting a refund of the taxes paid. On stipulated facts, the district court ruled in favor of the Tax Commission and this appeal followed.

The facts stipulated by the parties are as follows:

1. Plaintiff J.R. Simplot Company, Inc., is and at all relevant times was a Nevada corporation with its headquarters in Boise, Idaho.

2. The remaining plaintiffs, including plaintiff Simplot Chemical Company, Ltd., are subsidiaries or affiliates of J.R. Simplot Company, Inc. Simplot Chemical Company, Ltd. is a wholly owned subsidiary of J.R. Simplot Company, Inc.

3. Simplot Chemical Company, Ltd. is and at all relevant times was a Canadian corporation with its principal place of business in Brandon, Canada.

4. On April 14, 1984, the Corporate Income Tax Section of the Idaho State Tax Commission issued a Notice of Deficiency Determination to J.R. Simplot Company, Inc. and subsidiaries.

5. On April 18, 1984, the J.R. Simplot Company, Inc. and subsidiaries filed a timely petition for redetermination.

6. On January 22, 1986, a modified deficiency determination was issued to reflect changes to J.R. Simplot Company, Inc.'s return pursuant to Internal Revenue Service audit adjustments. The modified deficiency determination for J.R. Simplot Company, Inc. and subsidiaries reflected additional tax of $1,084,730.00 plus $707,791.826 [sic] interest to March 1, 1986, for a total of $1,791,826.00.

7. A timely protest of the modified deficiency determination was filed by J.R. Simplot Company, Inc. and subsidiaries.

8. On November 26, 1986, the Idaho State Tax Commission issued a decision in Docket No. 00507 (formerly 49017–01) affirming the Commission's deficiency determination.

9. On December 23, 1986, the plaintiffs J.R. Simplot Company, Inc. and subsidiaries hand-delivered to the defendant Idaho State Tax Commission a check in the amount of $1,915,356.00, which represented payment to the defendant of the tax assessed as shown in the aforesaid decision of the Idaho State Tax Commission, together with interest calculated through December 31, 1986. The $1,084,730 tax assessed would be reduced by $568,254 if the income of Simplot Chemical Company, Ltd. were ex-

cluded from the Simplot combined group. The tax assessed would be reduced by $404,864 if *both* the income and factors of Simplot Chemical Company, Ltd. were excluded from the Simplot group. Under either situation the interest would also be reduced by an appropriate amount.

10. J.R. Simplot Company, Inc.'s only foreign affiliate or subsidiary during the tax years at issue in this case was Simplot Chemical Company, Ltd.

11. For purposes of I.C. § 63–3027(s), J.R. Simplot Company, Inc. and its domestic subsidiaries at issue in this case were engaged in a unitary business during the tax years at issue.

12. If Simplot Chemical Company, Ltd. had been a domestic corporation, its operations would have been part of the unitary business activities of J.R. Simplot Company, Inc. for purposes of I.C. § 63–3027(s) during the tax years at issue because the factual indicia of unitary operation are present.

13. During the tax years at issue, Simplot Chemical Company, Ltd. did not have any federal "taxable income" as defined in § 63 of the Internal Revenue Code. Non–U.S. source income of foreign corporations is not gross income for federal tax purposes under I.R.C. § 882(b).

R., 50–52 (emphasis in original.)

Based upon these stipulated facts, Simplot argues that the tax liability of a corporation is a three-step process. The first step is to determine a corporate taxpayer's "taxable income" under I.C. § 63–3022. The second step is to apportion an appropriate share of the corporation's taxable income to the state of Idaho under I.C. § 63–3027. The third step is to multiply Idaho's share of the corporation's "taxable income" by the corporate income tax rate to calculate the tax due.

Simplot argues that the Tax Commission ignored this process when it issued its deficiency determinations because I.C. § 63–3022 which defines "taxable income" ex-

cludes foreign source income. Section 63–3022 states that "[t]he term 'taxable income' means 'taxable income' as defined in section 63 of the Internal Revenue Code" with numerous adjustments not at issue here. Because the parties stipulated that Simplot's foreign affiliate Simplot Chemical Company, Ltd. ("Chemical") did not have federal "taxable income," Simplot argues that the Tax Commission may not include Chemical's foreign source income in Simplot's total tax base for purposes of computing Idaho income tax.

Amici buttress this argument by noting that since the adoption of the Idaho Income Tax Act in 1958, the legislature has maintained a consistent policy of "piggybacking" the definition of Idaho taxable income with the definition of federal taxable income in order to provide a consistent and easily identifiable tax base. Accordingly, I.C. § 63–3002 in pertinent part states:

It is the intent of the legislature by the adoption of this act, insofar as possible to make the provisions of the Idaho act identical to the provisions of the Federal Internal Revenue Code relating to the measurement of taxable income, to the end that the taxable income reported each taxable year by a taxpayer to the internal revenue service shall be the identical sum reported to this state, subject only to modifications contained in the Idaho law ...

In addition, amici argue that the Tax Commission's regulations since 1959 support Simplot's straightforward interpretation and that the Tax Commission has never issued any regulations which would support its interpretation. Moreover, the corporate tax return forms prepared by the Tax Commission do not provide for the inclusion of foreign source income in the taxpayer's "preapportionment tax base" [1] but consistently apportion the income attributable to Idaho based on federal taxable income.

The Tax Commission disputes Simplot's position by arguing that I.C. § 63–3022

---

1. This is a non-statutory term used by the Tax Commission to represent the world-wide unitary income of a corporate taxpayer from which the portion of income attributable to Idaho is calculated.

does not answer whether foreign source income can be included in the "preapportionment tax base" of a multinational corporation. The Tax Commission argues that foreign source income is not considered "taxable income" under its construction of the statute but is merely used to compute the total preapportionment tax base used to calculate the amount of income apportionable to Idaho. According to the Tax Commission, the provisions of I.C. § 63-3022 defining taxable income only become relevant *after* the Idaho portion of total "business income" has been apportioned under I.C. § 63-3027. The Commission contends that if foreign source income were not included in the total preapportionment tax base a taxpayer could artificially reduce the amount of income attributable to Idaho by merely changing the corporate status of the foreign entity.

The Tax Commission further argues that because I.C. § 63-3027 is a specific statutory provision controlling the apportionment of corporate business income its provisions should be given priority over I.C. § 63-3022. Idaho Code § 63-3027, entitled "Computing taxable income of corporations," provides: "The Idaho taxable income of any corporation with a business situs in this state shall be computed and taxed in accordance with the rules set forth in this section...." The Tax Commission emphasizes that one of the "rules set forth" in I.C. § 63-3027 requires that *"[a]ll business income* shall be apportioned to this state" by applying a fraction designed to calculate the portion of business activity which is apportionable, and therefore taxable, to Idaho. I.C. § 63-3027(i). The Commission argues that "business income" for purposes of I.C. § 63-3027 is not limited to the definition of "taxable income" under I.C. § 63-3022. Because I.C. § 63-3027(s) allows the Tax Commission to combine the income of two or more corporations "when necessary to accurately reflect income," the Tax Commission argues that it has authority to include foreign source income in the preapportionment tax base

even though such business income is not federal taxable income under I.R.C. § 63.

The Tax Commission buttresses its statutory argument by reliance on the 1986 "water's edge" legislation[2] giving taxpayers an election whether to include foreign source income that is not federal taxable income in their preapportionment tax base. If Simplot's argument was correct, the Tax Commission argues, there would have been no need for such an election process because the Idaho Income Tax Act would not have allowed foreign source income to be included in the tax base in any event.

The Tax Commission further reinforces its argument by reference to a joint resolution passed by the joint Idaho legislature in 1982 signaling their opposition to an amicus curiae brief of the United States Justice Department filed in an unrelated case. The U.S. brief opposed the use of the world-wide unitary method of taxation utilized by another state. In its joint resolution opposing the brief, the Idaho legislature indicated that the federal government's position would tie the hands of the states. The Tax Commission argues that the purpose of this joint legislative resolution should be construed to uphold the Idaho world-wide unitary method of taxation.

The district court ultimately accepted Simplot's statutory interpretation, stating that "the Tax Commission's explanation of the statutory corporate income tax scheme places a strained and harsh interpretation on a series of statutes that otherwise have a plain, obvious, and rational meaning." In addition, the district court noted that "[t]he Idaho Income Tax Act, like all tax statutes, must be construed as favorably as possible to the taxpayer and strictly against the taxing authority." *Futura Corp. v. State Tax Comm'n*, 92 Idaho 288, 291, 442 P.2d 174, 177 (1968).

Notwithstanding its statutory conclusion, the district court denied Simplot its requested relief by reference to Idaho's 1986 water's edge legislation. The court stated:

**2.** The Tax Commission defined water's edge legislation in part as "[t]he method of filing allowed in Idaho Code § 63-3027B et seq. This

filing method essentially limits the geographic scope of unitary taxation to the 'water's edge' of the United States."

In 1986, the legislature granted to qualified tax payers the right to elect water's edge treatment of the determination of income attributable to sources within this state. I.C. 63–3027 B–E. S.L.1986, Ch. 342 [§] 1. The only purpose for the water's edge election statute is to avoid the inclusion of income of subsidiary foreign corporations in the allocation and apportionment process of [I.C. §] 63–3027. If the legislature believed that foreign source income by definition was excluded from the allocation and apportionment process of the then-existing version of [I.C. §] 63–3027, there was absolutely no reason to pass water's edge legislation.

The courts infer that the legislature does not intend to perform a useless or futile act in enacting legislation. *Walker v. Nationwide Financial Corp. of Idaho,* 102 Idaho 266, 629 P.2d 622 [662] (1981). Consequently, it is apparent that the legislature originally must have intended that foreign source income be included in the apportionment and allocation process and later added legislation in 1986 to provide a means of avoiding inclusion of foreign source income in that process.

Thus, the district court found that the legislature must have intended that foreign source income be included in the preapportionment tax base prior to the time it enacted the 1986 water's edge legislation even though, according to the court, the statutory language did not support the legislature's apparent intention.

On appeal, Simplot and amici argue that the 1986 water's edge election legislation is not rendered meaningless or superfluous if Simplot's interpretation of the statutory language of I.C. §§ 63–3022 and 3027 is accepted. Even assuming that foreign source income which is not federal taxable income cannot be included in the preapportionment tax base, Simplot argues that there are differences between the tax treatment of those corporations which elect water's edge treatment and those which do not make such an election. Accordingly, Simplot asserts that the district court's reasoning in upholding the deficiency determination notices constitutes reversible error.

The Tax Commission does not dispute this argument but responds that after making adjustments to reflect the Tax Commission's corrected "assumptions," these changes are insignificant. Without determining the significance of the changes brought about by the 1986 water's edge legislation, we note that the legislature is not required to make significant changes when it enacts legislation. Therefore, because it is undisputed that the 1986 water's edge legislation retains some significance under Simplot's interpretation of the statute, we hold that the rationale used by the district court is no longer applicable.

■ Nevertheless, it is well established that this Court will use the correct legal theory to affirm the correct decision of a district court even when it is based on an erroneous legal theory. *State v. Engelbert,* 114 Idaho 89, 753 P.2d 825 (1988); *Andre v. Morrow,* 106 Idaho 455, 680 P.2d 1355 (1984); *Idaho Falls Consol. Hosp. v. Bingham County Bd. of County Commrs.,* 102 Idaho 838, 642 P.2d 553 (1982); *Foremost Ins. Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981); *Matter of Revello,* 100 Idaho 829, 606 P.2d 933 (1979); *Eimco Corp. v. Sims,* 100 Idaho 390, 598 P.2d 538 (1979); *Anderson & Nafziger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 595 P.2d 709 (1979); *Saulls v. Employment Sec. Agency,* 85 Idaho 212, 377 P.2d 789 (1963); *Jorgenson v. Stirling,* 35 Idaho 785, 209 P. 271 (1922); *Lowe v. Lym,* 103 Idaho 259, 646 P.2d 1030 (Ct.App.1982). Therefore, to determine whether the judgment of the district court can be affirmed, we start our analysis by reviewing the Tax Commission's interpretation of the Idaho Income Tax Act to determine if it can be sustained as a valid construction of the statutory scheme.

## II.

■ It is fundamental that the judiciary has the ultimate responsibility to construe legislative language to determine the law. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60, 73 (1803); *see*

also *Idaho Fair Share v. Public Utils. Comm'n,* 113 Idaho 959, 751 P.2d 107 (1988); *Ware v. Idaho State Tax Comm'n,* 98 Idaho 477, 567 P.2d 423 (1977); *Weller v. Hopper,* 85 Idaho 386, 379 P.2d 792 (1963). In carrying out this responsibility it is well established that "[i]t is the duty of courts in construing statutes to ascertain the legislative intent and to give effect thereto." *Carpenter v. Twin Falls County,* 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984). *See also In re Miller,* 110 Idaho 298, 715 P.2d 968 (1986); *Umphrey v. Sprinkel,* 106 Idaho 700, 682 P.2d 1247 (1983); *Gumprecht v. Coeur d'Alene,* 104 Idaho 615, 661 P.2d 1214 (1983); *Gavica v. Hanson,* 101 Idaho 58, 608 P.2d 861 (1980); *Summers v. Dooley,* 94 Idaho 87, 481 P.2d 318 (1971); *Idaho Pub. Utils. Comm'n v. V-1 Oil Co.,* 90 Idaho 415, 412 P.2d 581 (1966); *Lebrecht v. Union Indem. Co.,* 53 Idaho 228, 22 P.2d 1066 (1933). In determining legislative intent, this Court will examine "the reasonableness of the proposed interpretations, and the policy behind the statutes" so that "all sections of applicable statutes [can] be construed together." *Umphrey v. Sprinkel,* 106 Idaho 700, 706, 682 P.2d 1247, 1253 (1983); *see also Magnuson v. Idaho State Tax Comm'n,* 97 Idaho 917, 556 P.2d 1197 (1976); *Lebrecht v. Union Indem. Co.,* 53 Idaho 228, 22 P.2d 1066 (1933).

However, the courts are not alone in their responsibility to interpret and apply the law. As the need for responsive government has increased, numerous executive agencies have been created to help administer the law. To carry out their responsibility, administrative agencies are generally "clothed with power to construe [the law] as a necessary precedent to administrative action." *Kopp v. State,* 100 Idaho 160, 163, 595 P.2d 309, 312 (1979). As a result, this Court has long followed the rule that the construction given to a statute by the executive and administrative officers of the State is entitled to great weight and will be followed by the courts unless there are cogent reasons for holding otherwise. *Kopp v. State,* 100 Idaho 160, 595 P.2d 309 (1979); *Idaho Pub. Utils. Comm'n v. V-1 Oil Co.,* 90 Idaho 415, 412 P.2d 581 (1966); *Services, Inc. v. Neill,* 73 Idaho 330, 252 P.2d 190 (1953); *McCall v. Potlatch Forests,* 69 Idaho 410, 208 P.2d 799 (1949); *State v. Hubbard,* 63 Idaho 791, 126 P.2d 561 (1942); *Breckenridge v. Johnston,* 62 Idaho 121, 108 P.2d 833 (1940); *Ada County v. Bottolfsen,* 61 Idaho 363, 102 P.2d 287 (1940); *United Pac. Ins. Co. v. Bakes,* 57 Idaho 537, 67 P.2d 1024 (1937); *Pocatello v. Ross,* 51 Idaho 395, 6 P.2d 481 (1931); *Bashore v. Adolf,* 41 Idaho 84, 238 P. 534 (1925); *State v. Omaechevviaria,* 27 Idaho 797, 152 P. 280 (1915).

Nevertheless, in our most recent case on the subject, *Idaho Fair Share v. Public Utils. Comm'n,* 113 Idaho 959, 751 P.2d 107 (1988), we substantially limited this rule wherein we stated:

> While myriad cases state that the construction given a statute by an administrative agency is entitled to great weight, *see Kopp v. State,* 100 Idaho 160, 163, 595 P.2d 309, 312 (1979) (*see* cases cited within); *Public Utilities Commission v. V-1 Oil Co.,* 90 Idaho 415, 420, 412 P.2d 581, 586 (1966) (*see* cases cited within), the proposition is commonly stated with the proviso that the administrative construction will not be followed if there are cogent reasons for holding otherwise. *Id.* In addition, there are two unanimous decisions of this Court which establish the position that whether an administrative construction is correct is ultimately a question for judicial decision. *Ware v. State Tax Commission,* 98 Idaho 477, 481, 567 P.2d 423, 427 (1977); *Compensation Co. v. Hubbard,* 70 Idaho 59, 62, 211 P.2d 413, 416 (1949).
>
> Finding that there are cogent reasons for straying from the Commission's reading of the statute and recognizing that the construction of a statute is [a] matter of law for the judiciary, *we will apply the standard of free review to the Commission's interpretation* of I.C. § 61-617A to which we now turn.

113 Idaho at 961–62, 751 P.2d at 109–10 (emphasis added).

The Court in *Idaho Fair Share* did not indicate what cogent reasons require us to

ignore the statutory construction of the Commission other than the obvious fact that the Court may disagree with the agency's interpretation. Thus, by introducing the standard of "free review" whenever we disagree with the statutory interpretation of an agency, we appeared to have undermined our lengthy precedent affording deference to agency interpretations of law. Because *Idaho Fair Share* followed a number of other decisions in which the rule of judicial deference had not been vigorously applied, *see Hammon v. Farmers Ins. Co.*, 109 Idaho 286, 707 P.2d 397 (1985); *Kopp v. State*, 100 Idaho 160, 595 P.2d 309 (1979); *Ware v. Idaho State Tax Comm'n*, 98 Idaho 477, 567 P.2d 423 (1977), the status of the rule of judicial deference in Idaho is currently tenuous and uncertain. Indeed, the Tax Commission did not even raise the rule of judicial deference in its brief.[3]

### A.

We have reviewed the status of the deference rule in our sister states and note that the rule has been undermined in those states as well. Utah appears to have rejected the traditional rule giving great weight to agency interpretation in favor of a rule "according no deference to an administrative agency's interpretation" of a statute except in a "limited number of circumstances where the agency's interpretation of a statute is entitled to *some* deference." *Chris & Dick's Lumber v. Tax Comm'n*, 791 P.2d 511, 513 (Utah 1990) (emphasis added); *see also Williams v. Mountain States Tel. & Tel. Co.*, 763 P.2d 796, 798–99

(Utah 1988); *Telecommunications Resellers v. Public Serv. Comm'n*, 747 P.2d 1029, 1030 (Utah 1987); *Adkins v. Utah Div. of State Lands*, 719 P.2d 524, 526 (Utah 1986); *Utah Dep't of Adm. Serv. v. Public Serv. Comm'n*, 658 P.2d 601, 608 (Utah 1983).

The Alaska Supreme Court recently held that when a "statutory interpretation ... presents a question of law ... no particular deference is owed to the agency's interpretation of the applicable statutes." *Noey v. Department of Environ. Conser.*, 737 P.2d 796, 800 (Alaska 1987); *see also Alaska Survival v. State Dep't of Natural Resources*, 723 P.2d 1281 (Alaska 1986); *Kjarstad v. State*, 703 P.2d 1167 (Alaska 1985); *State Dep't of Revenue v. Amoco Prod. Co.*, 676 P.2d 595 (Alaska 1984); *Wein Air Alaska, Inc. v. Dep't of Revenue*, 647 P.2d 1087 (Alaska 1982); *National Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811 (Alaska 1982).

The Nevada Supreme Court in recent years has also declined to follow the traditional rule giving great weight to the statutory constructions of the state's agencies. While noting that deference may be proper when the agency's construction is "persuasive," *see State v. Morros*, 104 Nev. 709, 713, 766 P.2d 263, 266 (1988) (per curiam); *Nevada Power Co. v. Public Serv. Comm'n*, 102 Nev. 1, 4, 711 P.2d 867, 869 (1986) (per curiam), that Court has held that a court "may properly undertake independent review of the administrative construction of a statute." *Nevada Employment Sec. Dep't v. Capri Resorts, Inc.*, 104 Nev. 527, 528, 763 P.2d 50, 51 (1988) (per curiam) (citations omitted); *American Int'l*

---

**3.** While we have often held that a party will be limited to its legal theory on appeal, *Masters v. State*, 105 Idaho 197, 668 P.2d 73 (1983); *Heckman Ranches, Inc. v. State*, 99 Idaho 793, 589 P.2d 540 (1979); *Ford v. Lord*, 99 Idaho 580, 586 P.2d 270 (1978); *Frasier v. Carter*, 92 Idaho 79, 437 P.2d 32 (1968), the rule of deference is part of this Court's standard of review of agency statutory interpretations, *see Idaho Fair Share v. Public Utils. Comm'n*, 113 Idaho 959, 751 P.2d 107 (1988); *see also Chris & Dick's Lumber & Hardware v. Tax Comm'n*, 791 P.2d 511 (Utah 1990); *McPherson v. Employment Div.*, 285 Or. 541, 591 P.2d 1381 (1979); *Henning v. Industrial Welfare Comm'n*, 46 Cal.3d 1262, 762 P.2d 442, 252 Cal.Rptr. 278 (1988), and does not implicate the legal theory urged by the Tax Commission

or Simplot. As we will utilize any legal theory which supports the judgment of a district court, *State v. Engelbert*, 114 Idaho 89, 753 P.2d 825 (1988); *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984); *Lowe v. Lym*, 103 Idaho 259, 646 P.2d 1030 (1982); *Idaho Falls Consol. Hosps. v. Bingham County Bd. of County Commrs*, 102 Idaho 838, 642 P.2d 553 (1982); *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 627 P.2d 317 (1981); *Matter of Revello*, 100 Idaho 829, 606 P.2d 933 (1979); *Eimco Corp. v. Sims*, 100 Idaho 390, 598 P.2d 538 (1979); *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979); *Saulls v. Employment Sec. Agency*, 85 Idaho 212, 377 P.2d 789 (1963); *Jorgenson v. Stirling*, 35 Idaho 785, 209 P. 271 (1922), we address the rule of judicial deference here.

*Vacations v. MacBride,* 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983) (per curiam).

Oregon merely gives agency interpretations "some weight," *Zollinger v. Warner,* 286 Or. 19, 593 P.2d 1107 (1979), or "some consideration." *McPherson v. Employment Div.,* 285 Or. 541, 591 P.2d 1381 (1979). However, even this limited amount of deference is only given to the extent the statutory term is technical and the agency's expertise involves a peculiar knowledge of a given field. An agency's mere administration over a "specialized program does not mean that its political head or changing personnel either need or acquire expertise." *McPherson,* 285 Or. at 549, 591 P.2d at 1386. In *McPherson v. Employment Div.,* the Oregon Supreme Court disregarded a city employment division's interpretation of "employment" and other statutory terms because the court did "not regard the Employment Division as the kind of 'expert agency' that has special knowledge of the meaning of such statutory terms." 285 Or. at 550, 591 P.2d at 1386.

While the courts of some states continue to invoke the traditional rule giving great weight to the interpretations of agencies, they are equivocal in their application, leaving the impression that their administrative agency interpretations are entitled to judicial deference only when those interpretations are correct. *Compare Western Oil & Gas Ass'n v. Monterey Bay Unified Air Pollution Control Dist.,* 49 Cal.3d 408, 777 P.2d 157, 261 Cal.Rptr. 384 (1989) (great weight) *with California Ass'n of Psychology Providers v. Rank,* 51 Cal.3d 1, 793 P.2d 2, 270 Cal.Rptr. 796 (1990) (final responsibility for the interpretation of the law rests with the courts) and *Henning v. Industrial Welfare Comm'n,* 46 Cal.3d 1262, 762 P.2d 442, 252 Cal.Rptr. 278 (1988) (noncontemporaneous statutory interpretation contradicting agency's prior position cannot command significant judicial deference); *compare Urbish v. Lamm,* 761 P.2d 756 (Colo. 1988) (agency interpretation entitled to deference) with *Colorado Div. of Employment v. Parkview Episcopal Hosp.,* 725 P.2d 787 (Colo.1986) (courts not absolutely bound by agency interpretations); *compare Kansas ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 792 P.2d 971 (1990) (agency interpretations of statutes entitled to controlling significance) with *Kansas Power & Light Co. v. State Corp. Comm'n,* 237 Kan. 394, 699 P.2d 53 (1985) (if statutory construction represents a nontechnical question of law then courts are not required to give deference to agency interpretations) and *Wade v. Union Nat. Bank,* 10 Kan.App.2d 645, 707 P.2d 1087 (1985) (although deference is often given to agency interpretations courts are authorized to substitute their judgment for that of agency); *compare Cosro, Inc. v. Liquor Control Board,* 107 Wash.2d 754, 733 P.2d 539 (1987) (substantial weight to agency charged with administering statute) with *Green River Community College v. Higher Educ. Personnel Bd.,* 107 Wash.2d 427, 730 P.2d 653 (1986) ("error of law" standard applied to agency interpretations but with heightened degree of deference) and *Walthew, Warner, Keefe, Arron, Costello & Thompson v. State Dep't of Revenue,* 103 Wash.2d 183, 691 P.2d 559 (1984) (some deference but courts determine proper interpretation of statute).

Obviously, a rule that an agency construction will be followed only when it is correct is no rule at all. Therefore, many states have diluted the test from one that affords "great weight" to the interpretations of the agencies to a test which merely accepts agency interpretations if they are "persuasive." *See Raton v. Vermejo Conservancy Dist.,* 101 N.M. 95, 678 P.2d 1170 (1984); *Molycorp, Inc. v. New Mexico Corps. Comm'n,* 95 N.M. 613, 624 P.2d 1010 (1981); *Perea v. Baca,* 94 N.M. 624, 614 P.2d 541 (1980).

### B.

Because the strength of the traditional rule of judicial deference is uncertain in Idaho as a result of our decision in *Idaho Fair Share,* as it is elsewhere, we deem it necessary to review our case history to determine the motivating rationale of this rule and thereby attempt to determine the continuing validity, if any, and proper application of the rule to the instant case.

The initial rationale given for the rule was that when administrative agency interpretations are relied upon by the citizens of the state over a period of substantial time, their undoing by the judiciary unsettles the repose of all those who have detrimentally relied on these agency interpretations. In our early case of *State v. Omaechevviaria,* 27 Idaho 797, 152 P. 280 (1915), this Court held that when a statute was questioned thirty-two years after it had been enacted it would not be disturbed unless the agency construction "is so obscure and doubtful that it is entitled to no weight or consideration." 27 Idaho at 803, 152 P. at 281. We noted that this principle had been applied by other courts to statutes which were not challenged "until after sixty years, fifty years, forty-five years, forty years, thirty years, and even twenty years." *Id.* (citations omitted). We also noted the additional rationale that when a "practical interpretation" of a statute is "obeyed by the citizens of the state" it should be entitled to additional weight. *Id.*

In the subsequent case of *Bashore v. Adolf,* 41 Idaho 84, 238 P. 534 (1925), this Court was faced with a statute which had been interpreted consistently by the Land Department of the federal government for forty-three years but which was being questioned in the face of dicta by a United States Supreme Court decision reversing a decision of this Court. *See Ruddy v. Rossi,* 248 U.S. 104, 39 S.Ct. 46, 63 L.Ed. 148 (1918), *rev'g* 28 Idaho 376, 154 P. 977 (1916). The U.S. Supreme Court's dicta appeared to cast doubt on the construction of the statute by the Land Department which had been followed by this Court and the courts of other states for many years.

After initially deciding in favor of the new "literal construction" inferred by the U.S. Supreme Court's dicta, this Court granted a rehearing and upheld the prior "liberal" statutory construction of the

Land Department which the Land Department had not altered after the U.S. Supreme Court's dicta in *Ruddy v. Rossi; see Bashore,* 41 Idaho at 97, 238 P. at 538 (William A. Lee, C.J., dissenting).[4] In doing so, this Court quoted from two U.S. Supreme Court cases that had acknowledged the respect due to the statutory interpretations of administrative agencies when they receive a "practical construction" and when they have been relied upon for many years.

"The *practical construction* given to an act of Congress fairly susceptible of different constructions, by one of the executive departments of the government, is always entitled to the highest respect.... *especially when important interests have grown up under the practice adopted. (Bates Refrigerating Co. v. Sulzberger,* 157 U.S. 1, 34, 15 S.Ct. 508, 39 L.Ed. 601; *United States v. Healey,* 160 U.S. 136, 141, 16 S.Ct. 247, 40 L.Ed. 369.)" (*Webster v. Luther,* 163 U.S. 331, 16 S.Ct. 963, 41 L.Ed. 179.)
".... The *practical construction* given to an act of Congress fairly susceptible of different constructions, by those charged with the duty of executing it, is entitled to great respect, and, *if acted upon for a number of years,* will not be disturbed except for cogent reasons." (*McLaren v. Fleischer,* 256 U.S. 477, 41 S.Ct. 577, 65 L.Ed. 1052.)

*Bashore,* 41 Idaho at 92, 238 P. at 536 (emphasis added). Because the agency construction "seem[ed] to us to be reasonable," this Court ignored the dicta of the U.S. Supreme Court in favor of the "practical construction" that had been adhered to by this Court and "the great weight of authority" elsewhere. *Bashore,* 41 Idaho at 93, 238 P. at 536.

*Pocatello v. Ross,* 51 Idaho 395, 6 P.2d 481 (1931), was the next decision by this Court which presented the issue of whether to defer to an administrative interpretation

---

4. In Chief Justice William A. Lee's dissent, he also indicated that the change in the opinion on rehearing was also undoubtedly influenced by the fact that two of the three original Idaho Justices sitting on the case had been replaced on account of their deaths. In addition, Chief Justice Lee noted that respondent, who lost after the rehearing, did not reargue his case because his counsel had moved out of the State. *Bashore,* 41 Idaho at 93, 238 P. at 536–37 (William A. Lee, C.J., dissenting).

of a statute. This Court again deferred to the agency's statutory interpretation relying on the rationale of repose and the Court stated:

> The construction applied in *State v. Stone*, [119 Mo. 668, 25 S.W. 211] has *for years* been applied in the main by our own board [of equalization]. *Since 1913*, the legislature has not seen fit to question or condemn that construction. Supported as it is by both reason and precedent, we do not feel justified in departing from it. "Administrative interpretation of a given law, while not conclusive, is, *if long continued*, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative to do so." (*Industrial Com. v. Brown*, 92 Ohio St. 309, 110 N.E. 744, L.R.A. 1916B, 1277.)

51 Idaho at 408, 6 P.2d at 485 (emphasis added).

In *United Pacific Insurance Company v. Bakes*, 57 Idaho 537, 67 P.2d 1024 (1937), this Court reversed the judgment of the district court which had found the construction of a tax statute by an Idaho agency to be incorrect. In reversing the district court in favor of the agency's statutory construction, this Court articulated several reasons in addition to the rationale of repose which support the rule of judicial deference and held that a

> contemporary construction by a coordinate branch of the government, charged with the duty of enforcing the statute, is when called upon by the courts to construe the statute, entitled to consideration and carries weight for two

reasons: First, it is a practical and administrative construction of the act; and second, where extended over a period of time leads to the conclusion that such construction being known to the legislature has received its tacit approval as being correct.

57 Idaho at 545, 67 P.2d at 1028 (citations omitted).[5]

Thus, by 1933 this Court had articulated five reasons which justified the rule of judicial deference which have been repeated in subsequent cases. The first rationale is that the rule ensures repose when important interests have "grown up" in reliance on an interpretation in existence for a number of years. *McCall v. Potlatch Forests*, 69 Idaho 410, 208 P.2d 799 (1949); *State v. Hubbard*, 63 Idaho 791, 126 P.2d 561 (1942); *Ada County v. Bottolfsen*, 61 Idaho 363, 102 P.2d 287 (1940); *United Pac. Ins. Co. v. Bakes*, 57 Idaho 537, 67 P.2d 1024 (1937); *Pocatello v. Ross*, 51 Idaho 395, 6 P.2d 481 (1931); *Bashore v. Adolf*, 41 Idaho 84, 238 P. 534 (1925); *State v. Omaechevviaria*, 27 Idaho 797, 152 P. 280 (1915).

The second rationale is that an agency interpretation represents a "practical" interpretation. *State v. Hubbard*, 63 Idaho 791, 796, 126 P.2d 561, 563 (1942); *United Pac. Ins. Co. v. Bakes*, 57 Idaho 537, 545, 67 P.2d 1024, 1028 (1937); *State v. Omaechevviaria*, 27 Idaho 797, 152 P. 280 (1915). This apparently refers to the fact that statutory language is often of necessity general and therefore cannot address all of the details necessary for its effective implementation.

---

5. In addition to placing reliance on this Court's rule preferring the statutory construction of an administrative agency, the Court in *United Pacific Insurance Company* also felt that a statutory amendment repudiating the agency's construction gave implicit support that the agency's original construction was correct for the years at issue in the case. The Court stated that "[t]he rule [is] that where an amendment is made it carries with it the presumption that the legislature intended the statute thus amended to have a meaning different than theretofore accorded it." *United Pac. Ins. Co.*, 57 Idaho at 546, 67 P.2d at 1029 (citations omitted); *see also McCall v. Potlatch Forests*, 69 Idaho 410, 208 P.2d 799 (1949).

The Tax Commission makes a similar argument in the instant case when it refers to the 1986 water's edge legislation. Although this legislation is not an amendment, its relation to the statutory sections at issue makes its treatment potentially similar. As discussed above, however, both parties agree that the 1986 water's edge legislation has introduced changes to the Idaho Income Tax Act independent of either party's interpretation of the statutory sections at issue in this case. Therefore, the 1986 water's edge legislation amends the Idaho Income Tax Act "to have a meaning different than theretofore accorded it." *United Pac. Ins. Co.*, 57 Idaho at 546, 67 P.2d at 1029.

The third rationale is that the legislature is charged with knowledge of how its statutes are interpreted. By not altering the statutory text the legislature is presumed to have sanctioned the agency interpretation. *Ada County v. Bottolfsen*, 61 Idaho 363, 102 P.2d 287 (1940); *United Pac. Inc. Co. v. Bakes*, 57 Idaho 537, 545, 67 P.2d 1024, 1028 (1937); *Pocatello v. Ross*, 51 Idaho 395, 408, 6 P.2d 481, 485 (1931). The Court elaborated on this rationale in *State v. Hubbard*, 63 Idaho 791, 126 P.2d 561 (1942), wherein it was stated that "[t]he weight given to executive or departmental practice is increased when the legislature re-enacts a statute in the same words and without indicating that the previous construction placed thereupon has been incorrect." *State v. Hubbard*, 63 Idaho at 796, 126 P.2d at 563.[6]

The fourth rationale is that an agency construction is entitled to additional weight when it is formulated *contemporaneously* with the passage of the statute in question. *McCall v. Potlatch Forests*, 69 Idaho 410, 413, 208 P.2d 799, 801 (1949); *State v. Hubbard*, 63 Idaho 791, 795–96, 126 P.2d 561, 562–63 (1942); *United Pac.*, 57 Idaho 537, 545, 67 P.2d 1024, 1028 (1937). This rationale assumes that the agency may have insight into legislative intent at the time of enactment which a court lacks, sitting, as it usually does, years after the statute is enacted. Because an agency may have been keenly aware of pending legislation and may have potentially influenced the shape of the law, a contemporary construction provides a unique window into the legislative intent at the time of enactment. This rationale is tempered by the realization that legislation which an agency opposes is subject to misconstruction by a subsequent interpretation which the agency casts on the legislation.

The fifth rationale articulated in our cases is that when an agency, "as a coor-dinate branch of government," construes a statute under its administrative area of responsibility courts should recognize and defer to the expertise developed by the agency. *United Pac.*, 57 Idaho 537, 545, 67 P.2d 1024, 1028 (1933). Because the judiciary in Idaho is intended to apply a general background to the law, the expertise of an agency is often useful in technical areas of the law where the risk of failing to understand all of the implications of a decision are great.

After these early cases had established the various rationale supporting the rule of judicial deference, this Court began to apply the rule with increasing reliance. In *Ada County v. Bottolfsen*, 61 Idaho 363, 102 P.2d 287 (1940), the Court merely required that the agency's statutory construction not be "clearly wrong" when the agency interpretation has been in existence over a lengthy period of time. In *Ada County*, the Court stated that "[i]t does not seem the construction given the statute by the state board for such length of time and not refuted by the county assessors is so clearly wrong as to require its overthrow now." 61 Idaho at 375, 102 P.2d at 293. The dissent in *Ada County* vigorously argued that the rule of judicial deference allowed an agency's "long continued or repeated violations of the law [to] have the effect of amending it to conform to the violations." *Ada County*, 61 Idaho at 377, 102 P.2d at 294 (Morgan, J., dissenting). Nevertheless, the Court ignored the concern of the dissent and reiterated that "this court early announced and has consistently adhered to the rule that a construction, given a statute susceptible of various constructions, by the executive and administrative officers of the state is entitled to great weight and will be followed by the courts unless there are · cogent reasons for

---

**6.** This rationale, without some additional indicia of affirmative legislative intent, has not stood the test of time. Presumed legislative acquiescence in the face of its own inaction has been labeled a very weak reed on which to base a decision. *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 805 P.2d 873, 278 Cal.Rptr. 614 (1991); *North Dakota v. Ennis*, 464 N.W.2d 378 (N.D.1990); *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990); *DiDonato v. Wortman*, 320 N.C. 423, 358 S.E.2d 489 (1987); *Berry v. Branner*, 245 Or. 307, 421 P.2d 996 (1966); *see also Martin v. Clements*, 98 Idaho 906, 575 P.2d 885 (1978); *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1970).

change." 61 Idaho at 374, 102 P.2d at 293 (citations omitted).

After *Ada County*, this Court decided *Breckenridge v. Johnston*, 62 Idaho 121, 108 P.2d 833 (1940), the only case prior to 1977, *see Ware v. Idaho State Tax Comm'n*, 98 Idaho 477, 567 P.2d 423 (1977), in which the rule of judicial deference was not followed.[7] In *Breckenridge*, the Court justified this departure by indicating that the statute at issue clearly forbade the agency position. With reference to an agency's position that it could pay interest on past due bond obligations the Court stated:

> Where, as here, it is clear, as hereinbefore pointed out, the drainage district statute confers no power whatever upon drainage districts to either pay or levy assessments for the payment of after-maturity interest, then, but in harmony with the cases above cited, administrative construction must, and will be disregarded.

62 Idaho at 133, 108 P.2d at 838. As a result of *Breckenridge*, it is apparent that when an agency construction clearly ignores the statute which it professes to interpret, then the Court need not pay heed to the statutory construction. However, as our case history illustrates, most agency interpretations do not clearly contravene the statute leaving the deference rule in force. This principle was illustrated by the cases following *Breckenridge*.

In *State v. Hubbard*, 63 Idaho 791, 126 P.2d 561 (1942), and *McCall v. Potlatch*

*Forests*, 69 Idaho 410, 208 P.2d 799 (1949), this Court again upheld the agency constructions. By the time *Services, Inc. v. Neill*, 73 Idaho 330, 252 P.2d 190 (1953), was decided the rule had became so embedded in our precedent that the inquiry seemed to shift from deciding whether the agency construction was correct to simply determining what the agency construction in fact was.

The strength of the rule was demonstrated in *Idaho Public Utilities Commission v. V-1 Oil Company*, 90 Idaho 415, 412 P.2d 581 (1966), in which this Court upheld the agency construction that a *"letter* of exemption" from the federal agency was equivalent to an *"affidavit* of exemption" required by the Idaho statute at issue in the case. The Court indicated that under the weight of the rule of deference it felt "constrained" to accept the agency's statutory construction. *V-1 Oil*, 90 Idaho at 421, 412 P.2d at 584.

Ten years later, however, the influence of this line of precedent began to wane. In *Ware v. Idaho State Tax Commission*, 98 Idaho 477, 567 P.2d 423 (1977), the Court ignored the rule of judicial deference in the face of what it considered to be agency overreaching. In doing so, the Court stated: "Whether or not an administrative construction of legislative language is correct is ultimately a question for judicial decision, especially where, as here, the language is devoid of any ambiguity." *Ware,*

---

7. *But see Compensation Co. v. Hubbard,* 70 Idaho 59, 62, 211 P.2d 413, 416 (1949). Although this case contains language which was subsequently relied upon to undercut the rule of judicial deference, *see Idaho Fair Share v. Public Utils. Comm'n,* 113 Idaho 959, 751 P.2d 107 (1988); *Ware v. Idaho State Tax Comm'n,* 98 Idaho 477, 567 P.2d 423 (1977), upon close examination it is clear that *Hubbard* did not directly address the rule of judicial deference.

In *Hubbard,* both parties agreed on the interpretation of the relevant statutory provisions. The only question was the application of the statute to a particular taxpayer. Because the agency had accepted a tax paid at a given rate for a period of five years from the taxpayer, the taxpayer argued that the rule of judicial deference required the Court to accept the agency's prior acquiescence to the lower rate of tax.

This argument is inapposite to the normal application of the rule. In *Hubbard,* the agency no longer accepted the rate of tax which it had previously accepted. Therefore, the rule did not support the taxpayer because the Court would have been required to defer to the latest agency decision. Moreover, the taxpayer was trying to equate the *specific application* of a statute to the normal use of the rule to defer to *general interpretations* of a statute. Finally, *Hubbard* does not indicate whether the agency was ever aware of the correct facts over the five year period so its "acquiescence" to the lower rate of tax may not have been an intentional agency construction. For these reasons, the rule of judicial deference was not at issue in *Hubbard* and its language, while subsequently relied upon, was merely dicta.

98 Idaho at 481, 567 P.2d at 427 (citations omitted).

While two years later the Court upheld the agency's interpretation in *Kopp v. State*, 100 Idaho 160, 595 P.2d 309 (1979), it did so only after finding "that the Department of Law Enforcement's interpretation of I.C. § 23–903 [was] *correct.*" *Kopp*, 100 Idaho at 164, 595 P.2d at 313 (emphasis added). Even though there had been considerable reliance by those receiving licenses under the agency's interpretation, thus implicating the rationale of repose, the Court felt it necessary to review the legislative history of the statute, employ a rule of statutory construction, and dispute the arguments raised against this construction in order to conclude that the agency's interpretation was correct. Clearly in *Kopp*, the Court did more than merely defer to the agency.

This weakened test was subsequently recognized and adopted by the Court of Appeals in *Hammon v. Farmers Insurance Group*, 107 Idaho 770, 692 P.2d 1202 (Ct.App.1985), *vacated sub nom. Hammon v. Farmers Insurance Company*, 109 Idaho 286, 707 P.2d 397. The Court of Appeals ignored the agency construction of a statute by stating: "We acknowledge that the Director's construction of insurance policies is entitled to great weight and will be followed unless there are cogent reasons for holding otherwise. We believe there are cogent reasons in this case for holding otherwise." 107 Idaho at 774, 692 P.2d at 1206 (citation omitted). The Court of Appeals did not indicate what those "cogent reasons" were.

This Court vacated the decision of the Court of Appeals in *Hammon v. Farmers Insurance Company*, 109 Idaho 286, 707 P.2d 397 (1985), but paid scant attention to the rule of judicial deference, preferring to rest its decision on what it perceived to be the meaning "obviously contemplate[d]" by the legislature. The fact that two justices dissented from the majority's opinion and that the Court of Appeals unanimously held otherwise would seem to indicate that the statute was not completely obvious or clear. However, the fact that this Court chose not to rest its decision on the rule of judicial deference illustrates the relative impotence and declining influence of the rule by 1985.

## C.

While the Idaho Supreme Court has been following the path of other states in moving away from the rule of deference, the United States Supreme Court has appeared to strengthen its resolve to follow agency interpretations when 1) the agency has been entrusted to administer the statute in question, 2) the interpretations of the agency are reasonable, and 3) the statute is unclear. In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), its most extensive treatment on the subject, the U.S. Supreme Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted). The U.S. Supreme Court went on to indicate that when a statutory scheme has been entrusted to an agency, "considerable weight should be accorded to an executive department's construction." 467 U.S. at 844, 104 S.Ct. at 2782.

This rule of deference was premised on the rationale of agency expertise. The Court stated that

[T]he principle of deference to administrative interpretations

"has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations."

467 U.S. at 844–45, 104 S.Ct. at 2782–83 (citations omitted). In *Chevron*, the U.S. Supreme Court reviewed the regulations of the Environmental Protection Agency and found that their inclusion of the "bubble concept" was based on a permissible construction of the term "stationary source" under the Clean Air Act.

### III.

■ After reviewing our extensive case history, as well as the holdings of the U.S. Supreme Court and various other state courts, we hold that the rule of deference to agency statutory constructions retains continuing validity. We hold that a standard of "free review" is not applicable to agency determinations. Accordingly, we hereby clarify and limit *Idaho Fair Share* to the extent that case implied that the standard of free review was appropriate for reviewing an agency's statutory interpretations.

■ In determining the appropriate level of deference to be given to an agency construction of a statute, we are of the opinion that a court must follow a four-prong test. The court must first determine if the agency has been entrusted with the responsibility to administer the statute at issue. Only if the agency has received this authority will it be "impliedly clothed with power to construe" the law. *Kopp v. State*, 100 Idaho 160, 163, 595 P.2d 309, 312 (1979).

The second prong of the test is that the agency's statutory construction must be reasonable. This requirement was recognized at the beginning of our case law when in *State v. Omaechevviaria*, 27 Idaho 797, 152 P. 280 (1915), we indicated that

deference would not be appropriate when an agency interpretation "is so obscure and doubtful that it is entitled to no weight or consideration." 27 Idaho at 803, 152 P. at 281; *see also Breckenridge v. Johnston*, 62 Idaho 121, 108 P.2d 833 (1940).

The third prong for allowing agency deference is that a court must determine that the statutory language at issue does not expressly treat the precise question at issue. An agency construction will not be followed if it contradicts the clear expressions of the legislature because "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781 (footnotes omitted).

If an agency, with authority to administer a statutory area of the law, has made a reasonable construction of a statute on a question without a precise statutory answer then, under the fourth prong of the test, a court must ask whether any of the rationales underlying the rule of deference are present. If the underlying rationales are absent then their absence may present "cogent reasons" justifying the court in adopting a statutory construction which differs from that of the agency.

When some of the rationales underlying the rule exist but other rationales are absent, a balancing is necessary because all of the supporting rationales may not be weighted equally. Therefore, the absence of one rationale in the presence of others could, in an appropriate case, still present a "cogent reason" for departing from the agency's statutory construction. Because these rationales are important in determining whether cogent reasons exist for departing from an agency interpretation, we disapprove of the practice of merely concluding that cogent reasons for departing from the agency interpretation exist without any further explanation. If one or more of the rationales underlying the rule are present, and no "cogent reason" exists for denying the agency some deference, the court should afford "considerable weight" to the agency's statutory interpretation. If, on the other hand, a court concludes that the agency is not entitled to receive

considerable weight to its interpretation based on the lack of justifying rationales for deference, then the agency's interpretation will be left to its persuasive force.

## IV.

■ Applying these principles to this instant case, we note that the Tax Commission is "impliedly clothed with power to construe" the tax statutes at issue in this case. *Kopp v. State*, 100 Idaho 160, 163, 595 P.2d 309, 312 (1979). We also note that the Tax Commission's statutory interpretation is a "reasonable" one in the face of a statute that does not directly address the question at issue of whether foreign source income can be included in the preapportionment tax base of multinational corporations doing business in Idaho for purposes of computing Idaho taxable income. While the Tax Commission's interpretation overlooks I.C. § 63–3022, it is not unreasonable for it to conclude that I.C. § 63–3027 controls over I.C. § 63–3022 because the former section is more specific in defining how to compute Idaho taxable income. *Farmer's Nat. Bank v. Wickham Pipeline Const.*, 114 Idaho 565, 759 P.2d 71 (1988); *Maxwell v. Cumberland Life Ins. Co.*, 113 Idaho 808, 748 P.2d 392 (1987); *Mickelsen v. Rexburg*, 101 Idaho 305, 612 P.2d 542 (1980); *Christensen v. West*, 92 Idaho 87, 437 P.2d 359 (1968).

Even though the Tax Commission's interpretation is reasonable we hold that it is not entitled to considerable weight because our balancing of the rationales supporting the rule of judicial deference provide "cogent reasons" for leaving the Tax Commission's interpretation merely to its persuasive value.

The rationale of repose does not exist in this case because, even under the Tax Commission's interpretation of the statute, the inclusion of foreign source income in the preapportionment tax base would no longer be required due to the 1986 water's edge legislation. Therefore, any interest built up to deal with a world-wide unitary taxation system no longer is necessary. Nevertheless, the Tax Commission argues that the outcome of this case will affect corporate taxpayers who might in the future desire to include their world-wide unitary income in their preapportionment tax base. Aside from the fact that this argument begs the question to be decided by this Court—which statutory interpretation is correct—we note that even if a hypothetical corporation might someday find a world-wide unitary tax system advantageous, the Tax Commission's statutory interpretation has not existed over a period of time sufficient for the rationale of repose to apply. The cases discussed above implicating this rationale dealt with interpretations of statutes over periods of many years. This situation is not presented in the instant appeal. The shortest time period in a case directly addressing this rationale was twelve years. *See McCall v. Potlatch Forests*, 69 Idaho 410, 208 P.2d 799 (1949); *see also State ex rel. Wedgwood v. Hubbard*, 63 Idaho 791, 126 P.2d 561 (1942) (thirteen years); *Ada County v. Bottolfsen*, 61 Idaho 363, 102 P.2d 287 (1940) (twenty-nine years); *United Pac. Ins. Co. v. Bakes*, 57 Idaho 537, 67 P.2d 1024 (1937) (twenty-six years); *Pocatello v. Ross*, 51 Idaho 395, 6 P.2d 481 (1931) (eighteen years); *Bashore v. Adolf*, 41 Idaho 84, 238 P. 534 (1925) (thirty-seven years); *State v. Omaechevviaria*, 27 Idaho 797, 152 P. 280 (1915) (thirty-two years). While we do not require that an agency's interpretation always exist for a period of at least twelve years to implicate the rationale of repose, we note that so far as the record indicates in this instant case, the Tax Commission has only sought to enforce its statutory interpretation since 1984 when the original notice of tax deficiency determination was issued for the years 1978–1980. Since the interpretation would only have been mandatory until the 1986 water's edge legislation took effect, we hold that this period of time is insufficient to create the need for repose envisioned by our prior cases.

The second rationale is also not applicable in the instant case for the Tax Commission's interpretation is no more a "practical" interpretation of the statute than is Simplot's. Both interpretations require that the general provisions of the code be applied to the specific context of a multina-

tional corporation with foreign subsidiaries. In fact, Simplot's simple, straightforward, interpretation appears to be the more practical of the two interpretations because it is based on the Tax Commission's prior regulations and tax return forms. In essence, the Tax Commission is attempting to discard its "practical" interpretation for what the district court called "a strained and harsh interpretation on a series of statutes that otherwise have a plain, obvious, and rational meaning."

The third rationale, the presumption of legislative acquiescence, also appears to be absent in this case. While Idaho's tax statutes are periodically reenacted by the legislature, thus presenting the classic situation in which the presumption of legislative acquiescence is present, the legislature appears to have taken steps to nullify the presumption of legislative intent in the interpretation of the Idaho Income Tax Act. In reenacting the 1985 version of the Act, the legislature stated: "DECLARATION OF INTENT. It is not the intent of the legislature to express any intent as to the construction of prior law or its application to issues or disputes existing pursuant to such prior law before judicial or administrative tribunals." 1985 Idaho Sess.Laws ch. 114 § 1. While this declaration literally only applies to the 1985 reenactment of the Idaho Income Tax Act, we agree with the supreme courts of other states that "legislative inaction is a weak reed upon which to lean in determining legislative intent," and that "something more than mere silence is required [to find] implied legislation." *Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1156, 805 P.2d 873, 880, 278 Cal.Rptr. 614, 621 (1991). *State v. Ennis,* 464 N.W.2d 378 (N.D.1990); *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990); *DiDonato v. Wortman,* 320 N.C. 423, 358 S.E.2d 489 (1987); *Berry v. Branner,* 245 Or. 307, 421 P.2d 996 (1966); *see also Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978); *Renner v. Edwards,* 93 Idaho 836, 475 P.2d 530 (1970). Therefore, we require "something more" to determine *actual* legislative intent than merely reen-

acting the statute after it has received an agency construction.

The Tax Commission points to the joint resolution referred to above, statements by the principal sponsor of the 1986 water's edge legislation, and other items of legislative history which imply that the legislature may have assumed that it had adopted a world-wide unitary tax system. However, we have reviewed the affidavit of the principal legislative sponsor presented by amici before the district court. The sponsor's statements contained in the affidavit accurately describe the forces which prompted the passage of the water's edge legislation. In his affidavit the principal sponsor explained that it was the federal government that was prompting the 1986 water's edge legislation because the federal government had included Idaho in its list of states attempting to include the world-wide unitary income of multinational corporations in its tax base. However, this was based on the position of the Tax Commission, not the intent of the legislature. He stated:

10. I have been asked if, in the course of my work on the water's edge issue and working with the various versions of the bill which were introduced in the legislature, the issue of whether the state had statutory authority under the Idaho Income Tax Act to tax everything the Tax Commission was already seeking to tax by way of audits and notices of deficiency performed upon various multinational companies, most notably the power to tax income of foreign subsidiaries which was never returned to the United States in the form of dividends or by other transfer, was considered. *My answer to that question is no.* At the time the water's edge legislation was being considered both prior to the 1986 legislative session and during the 1986 legislative session, there had been a great hue and cry on a national level about certain states, including Idaho, which were using a worldwide combination form in imposing state income tax upon multi-national corporations. The presidential working group which I described above had concluded that such an approach by these

states was a disincentive to business expansion and worked to the prejudice of United States companies in competition with foreign companies. There was much concern that the inequities resulting from such a system be corrected and it was apparent that if the states did not do so on their own, then the federal government would seek to dictate how those corrections would be made.

11. I am not aware that the presidential working group ever examined whether the various states individually had the statutory authority to tax the same types and amounts of income in applying the worldwide combination unitary scheme. I am also not aware that anyone in the Idaho legislature or among the various individuals involved in the drafting of, and commenting upon, the various pieces of Idaho water's edge legislation ever stepped back to examine that issue closely. My best guess is that I, along with the others involved, because of the way which the controversy over the worldwide combination approach and its perceived inequities had developed, *simply assumed* that Idaho, along with the other states focused upon by the presidential working group, must have had the power to tax all of the income which *the Idaho State Tax Commission* was then seeking to include and apportion and allocate in the worldwide combination method. (Emphasis added.)

Thus, the testimony of one of the primary legislative sponsors of the 1986 water's edge legislation indicates that it was the Tax Commission, not the legislature, that has pursued a policy of world-wide unitary taxation. In this circumstance it appears that the legislature was attempting to avoid the political effects of the Tax Commission's policies rather than to endorse them. Because the Tax Commission's legislative intent argument merely raises inferences in support of the true intent of the legislature and because the affidavit of the principal sponsor raises significant doubts about what the true implications of these scattered pieces of legislative history should be, we decline to presume that the

legislature intended to adopt a world-wide unitary tax system in Idaho.

The fourth rationale requiring contemporaneous agency interpretations is also absent. While the record does not disclose when the Tax Commission originated its statutory interpretation, it is unrefuted that the Tax Commission did not issue any regulations on this issue. The only action taken by the Tax Commission was the issuance of the tax deficiency notices and agency decisions of the type that gave rise to this lawsuit. These tax deficiency notices were not prepared contemporaneously with the passage of I.C. §§ 63–3022 or 63–3027 originally enacted in 1959. Idaho Code § 63–3027(s), the latest provision relied upon by the Tax Commission, was last amended in 1979, *see* 1979 Idaho Sess.Laws ch. 250, § 1, while the tax deficiency notices were issued in 1984. Accordingly, the Tax Commission did not prepare a contemporaneous interpretation of the statutes capturing the legislative intent at the time of enactment.

The final rationale of agency expertise is also missing from this case. While the Tax Commission is an expert in the area of Idaho taxation, normally providing a strong indication that judicial deference should be considered, in this case the Tax Commission did not utilize its expertise in formulating rules for including world-wide income in the preapportionment tax base of multinational corporations. As has been noted above, the Tax Commission did not prepare any regulations for the inclusion of income of foreign subsidiaries in a corporation's preapportionment tax base. The Tax Commission did not write any instructions in the corporate tax returns to this effect for the years in question. The only guidance offered by the Tax Commission by way of regulations and tax return forms appears to contradict the position it is taking now in this litigation. The only expertise provided by the Tax Commission supporting its current position was by way of notices of deficiency determination prepared and served years after the tax returns had been filed.

Moreover, the record indicates that the Tax Commission had not exhausted its thinking on this issue even prior to this litigation. In its appearance before the district court the Tax Commission presented a detailed explanation which illustrated how the tax would be calculated if its interpretation prevailed. After Simplot and amici critiqued this explanation, the record indicates that the Tax Commission created a new explanation which calculated the tax differently. While the Tax Commission asserted that the new calculation arrived at the same result as the illustration it had given to the district court, this serves to illustrate that the normal safeguards that should exist when an agency construes a statute were not existent in this case. Under these unusual circumstances, we hold that Tax Commission did not utilize its expertise in the formulation of its statutory interpretation outside of the context of this litigation.

Because none of the rationales supporting the rule of deference are present in the instant case, we hold that the foregoing analysis sets forth cogent reasons for not affording "considerable weight" to the Tax Commission's statutory interpretation. Leaving the Tax Commission's interpretation to its persuasive value, we agree with the district court that the Tax Commission's argument presents a strained explanation of what would otherwise be a straightforward taxation scheme. We agree with Simplot and amici that the intent of the legislature is to make,

> insofar as possible ... the provisions of the Idaho act identical to the provisions of the Federal Internal Revenue Code relating to the measurement of taxable income, to the end that the taxable income reported each taxable year by a taxpayer to the internal revenue service shall be the identical sum reported to this state.

I.C. § 63–3002. Because we find Simplot's statutory argument dispositive, we do not address the Tax Commission's subsidiary arguments used in support of its statutory interpretation.

## V.

■ In summary, we hold that foreign source income may not be included in the preapportionment tax base of a corporation unless that income is also federal taxable income under the provisions of I.C. § 63–3022. In reaching this holding, we have followed a four prong test that harmonizes our case law on the traditional judicial deference rule toward agency constructions of the Idaho Code. Under this test we hold that the Tax Commission's statutory interpretation is left to its persuasive quality because the rationales supporting the rule of deference are absent in this particular case. We agree with the district court that Simplot's statutory argument is more persuasive than that of the Tax Commission, and accordingly reverse the judgment of the district court with instructions to set aside the notices of deficiency determinations issued against Simplot.

Costs to appellant.

BAKES, C.J., and JOHNSON, J., concur.

McDEVITT, J., concurs in result.

BISTLINE, Justice, dissenting.

The proper conclusion in this case is that prior to the 1986 enactment of water's edge legislation by the Idaho legislature, Simplot did not have the right to exclude from its unitary business tax scheme the foreign source income of Simplot Chemical, its Canada-based subsidiary. This conclusion is the correct one, even assuming that the income from the foreign subsidiary was not considered "federal taxable income" within the definition in 26 U.S.C. § 63. Therefore, the district court's affirmance of the Tax Commission's determination that Simplot must pay additional taxes for the tax years ending August 31 in 1977, 1978, 1980, 1981, and 1982 should be affirmed.

The portion of the tax deficiency that is disputed comes from Simplot's only foreign subsidiary, Simplot Chemical.[8] As stipula-

---

8. The stipulation of facts, numbers 1 through 13, entered into by the parties in the district court proceeding are set out in the Court's opinion.

tion of fact number 9 states, without the inclusion of Simplot Chemical in Simplot's unitary business tax scheme, the tax deficiency is significantly reduced. The arguments of the parties are simple, and it is appropriate to reiterate their respective contentions.

Simplot relies heavily upon stipulated fact number 13, which states that Simplot Chemical, Simplot's only foreign affiliate, had no *federal* taxable income. Foreign source income is not recognized as taxable income by the federal tax code. Therefore, Simplot alleges that it cannot now be taxed by the state of Idaho for the business income of Simplot Chemical because Idaho tracks the federal definition of taxable income.

The Tax Commission argues that the passage of water's edge legislation in 1986 clarified the state of the law which was in existence prior to the effective date of that legislation. Water's edge legislation allows businesses to elect to exclude foreign source income from business income. Therefore, before water's edge legislation was enacted in Idaho, businesses did not have the choice—they were required to include foreign source income as part of their preapportionment business income. The Tax Commission also points out that Simplot needlessly complicated the underlying issue by centering upon the definition of "taxable income" instead of the definition of "business income." The phrase "taxable income" as used in I.C. § 63–3002 declares the legislature's intent to apply "the various provisions of the Federal Internal Revenue Code relating to the definition of income, ... resulting in a final amount called 'taxable income' in the Internal Revenue Code; [and] to impose a tax on residents of this state measured by taxable income wherever derived." The phrase "business income" appears in I.C. § 63–3027, the statute governing the computation of "taxable income" of any corporation with a business situs in Idaho. According to stipulation of fact number 1, Simplot is a corporation with a business situs in Idaho.

The Tax Commission and the district court were correct in framing the question presented as whether the modifications made by the water's edge legislation in 1986 preclude Simplot, prior to the effective date thereof, from excluding foreign source income from business income. Usually, "[w]hen the legislature changes the language of a statute, it is presumed that they intended to change the application or meaning of that statute." *Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 721, 682 P.2d 1263, 1268 (1984) (citations omitted). No party disputes the fact that the legislature changed the tax laws in Idaho by adding water's edge legislation in 1986. Therefore, the question is whether, before water's edge was in effect, Simplot had the right to exclude from their unitary business tax scheme the foreign source income of Simplot Chemical. The district court reasoned:

> In 1986, the legislature granted to qualified taxpayers the right to elect water's edge treatment of the determination of income attributable to sources within this state. [Act of April 4, 1986, ch. 342, 1987 Idaho Sess.Laws 846.] The only purpose for the water's edge election statute is to avoid the inclusion of income of subsidiary foreign corporations in the allocation and apportionment process of [I.C. §] 63–3027. If the legislature believed that foreign source income by definition was excluded from the allocation and apportionment process of the then-existing version of [I.C. §] 63–3027, there was absolutely no reason to pass water's edge legislation.

District Court Memorandum Decision, R. 94.

That reasoning is sound. Applying the same five malleable "principles" which the majority delineate as guidelines for determining whether to follow the rule of judicial deference to agency interpretations, the opposite result is the more reasoned one: the Tax Commission's position regarding inclusion of foreign source income in the preapportionment tax base prior to the 1986 water's edge legislation, and the dis-

trict court's affirmance thereof should be affirmed.