Argued November 3, 1978, affirmed as modified April 3, 1979

ZOLLINGER, *Petitioner,*

*v.*

WARNER et al, *Respondents.*

(TC No. 76-3176, CA No. 7610, SC 25809)

FLYNN, *Petitioner,*

*v.*

WARNER et al, *Respondents.*

(TC No. 76-3177, CA No. 7619, SC 25809)

MOFFITT, *Petitioner,*

*v.*

WARNER et al, *Respondents.*

(TC No. 76-3178, CA No. 7622, SC 25809)

593 P2d 1107

[20]

Arthur C. Johnson, Eugene, argued the cause for petitioners. With him on the briefs were R. Scott Palmer, Stanton F. Long, Timothy J. Sercombe, and Michael L. Williams of Johnson, Harrang & Mercer, Eugene; and Darst B. Atherly and George A. Burgott, of Thwing, Atherly & Butler, Eugene, attorneys for National Association of Secondary School Principals, amicus curiae.

Bruce E. Smith, Eugene, argued the cause for respondents. With him on the briefs were Orlando John Hollis, and Young, Horn, Cass & Scott, Eugene.

Robert D. Durham, of Kulongoski, Heid, Durham & Drummonds, Eugene, filed a brief amicus curiae for Oregon Education Association.

Darst B. Atherly, George A. Burgott and Thwing, Atherly & Butler, Eugene, filed a brief amicus curiae for the National Association of Secondary School Principals.

Edward C. Harms, Jr., and Harms & Harold, Springfield, filed a brief amicus curiae for Oregon School Boards Association.

Before Denecke, Chief Justice, and Holman, Tongue, and Howell, Justices.

HOLMAN, J.

## HOLMAN, J.

In April 1976 the Superintendent of Schools for the Eugene School District No. 4J, with the consent of the District School Board, transferred the plaintiffs, three senior high school principals, to positions as junior high school principals. Each of the plaintiffs had served for more than three years as a senior high school principal and possessed what is known as "administrative tenure" under what was then ORS 342.845(2). Thereafter, plaintiffs filed a petition for a writ of mandamus in the circuit court asking the court to require the school board to reinstate them as senior high school principals.

The circuit court directed the school board to reinstate plaintiffs and the school board appealed to the Court of Appeals. The Court of Appeals vacated the order of the circuit court and dismissed the petition upon the ground that plaintiffs had an adequate remedy at law[1] by appeal to the Fair Dismissal Appeals Board (FDAB) and, therefore, the circuit court had no jurisdiction. 32 Or App 385, 574 P2d 680. This court allowed review.

The substantive dispute between plaintiffs and the school board turns on the meaning of the language "a lower paying position" under former ORS 342.845(2). That portion of the statute provides:

> "No permanent teacher who has served as an administrator in a particular position for a period of three successive years in a tenure district shall be transferred to *a lower paying position* as an administrator or to a nonadministrative position without his consent except for the reasons for which a permanent teacher may be dismissed as provided in ORS 342.200 and 342.805 to 342.955 and in accordance with the procedures set forth in ORS 342.200 and 342.805 to

---

[1] ORS 34.110:

"A writ of mandamus may be issued to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station * * * The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law."

[21]

342.955 pursuant to which a permanent teacher may be dismissed." (Emphasis added.)

Plaintiffs claim that the transfers from senior high school principal to junior high school principal were transfers to lower paying positions while the school board contends that they were not such transfers because plaintiffs' individual pay was not reduced. The trial judge held that plaintiffs had been transferred to a lower paying position and required their reinstatement. The Court of Appeals vacated this decision because it viewed it as one for the FDAB in the first instance.

■ In their petition for review plaintiffs challenge the propriety of the Court of Appeals' raising *sua sponte* the issue of whether there was a plain, speedy and adequate remedy in the ordinary course of the law. The parties did not raise the issue because both sides wanted an immediate decision by the courts as to the meaning of the disputed language. However, in this situation there is a consideration which is more important than what the litigants want and that is the need to make sure that the statute is interpreted in the manner and by the procedures the legislature established for that purpose. This court views the problem as a broader one than whether an adequate remedy at law exists. The question is whether the legislature, by its enactment of the fair dismissal law, intended the court system or the FDAB to decide the present controversy in the original instance. In *Willamette Valley Lumber Co. v. Tax Commission,* 226 Or 543, 548-49, 359 P2d 98, 360 P2d 926 (1961), in a somewhat different context, this court made the observation that

> "[t]he fact that direct access to the courts might be more speedy and less burdensome than the route provided by statute does not necessarily justify judicial intervention in the executive or legislative process when the legislature has provided an exclusive remedy which is adequate. [Citing cases.]
> "* * * * *.

[22]

"* * *. '* * * The justification for the burden upon the individual of subjecting him to such [administrative] proceedings instead of stopping them at the outset by injunctive or other relief in the courts lies in the absence of an alternative consistent with the orderly conduct of the government's business * * *.' *United States v. Kauten,* 133 F2d 703, 706 (2d Cir 1943)."

The Court of Appeals justified raising the issue *sua sponte* by noting that a court can always raise the issue of its jurisdiction. It said "[w]here want of jurisdiction appears at any stage of the proceeedings on appeal, it is the duty of the appellate court to refuse to proceed further." 32 Or App at 391. The Court of Appeals believed that the circuit court lacked "jurisdiction" to issue a writ of mandamus because the FDAB had not had the opportunity to consider the controversy. Any appeal from the agency would go to the Court of Appeals and not to the circuit court. The Court of Appeals believed that the circuit court's lack of "jurisdiction" deprived it of jurisdiction as well. As plaintiffs point out, this is an inappropriate application of the rule. While the Court of Appeals' decision regarding whether the courts or the FDAB should have the opportunity in the original instance to interpret the language in question necessarily involved, in a sense, an analysis of their respective "jurisdictions," the resolution of the issue was a decision which both courts had jurisdiction to make. The circuit court had authority to consider the fair dismissal law and the rules relating to writs of mandamus and to decide whether mandamus would lie. "The test of jurisdiction is not right decision, but the right to enter upon the inquiry and make some decision." Sanborn, J., in *United States v. Ness,* 230 F 950, 953 (8th Cir 1916), as quoted in *School Dist. No. 1, Mult. Co. v. Nilson,* 262 Or 559, 567, 499 P2d 1309 (1972). The circuit court had jurisdiction to be wrong. Since the circuit court had jurisdiction, the Court of Appeals' justification for raising this issue *sua sponte* is inadequate.

[23]

■■ That the court gave an inadequate reason for raising the issue on its own motion does not require reversal if there is an adequate alternative reason for the action. In this instance there is such an alternative reason. Substantial policy reasons dictate in favor of *sua sponte* consideration. The legislature has established an agency, the FDAB, to oversee the propriety of discharges or demotions of professional school personnel. Whether the agency created by the legislatively established statutory scheme for the determination of such disputes should first have an opportunity to interpret the statutory language "lower paying position" is important in that it relates to the resolution of conflicts between the administrative and judicial branches of government and the carrying out of the legislative intent concerning who should make the decisions. It would be inappropriate to permit the parties to frustrate the legislature's intent by their assignments of error, points raised in argument, and the manner in which they have shaped their litigation. If it is proper for the FDAB to be the determinative body, it would be improper to permit the parties to substitute the court in its place by failure to raise the issue. We, therefore, conclude the Court of Appeals did not err in initiating an inquiry whether courts or agency should as an original matter construe the statutory language in question.[2]

■ Plaintiffs contend that the Court of Appeals' determination that the issue should originally be decided by the FDAB depends upon the particular factual circumstances of this case, and that the circuit court is not subject to reversal on appeal unless the reviewing court concludes that no facts exist which support the court's conclusion. This contention is fallacious, because the question is one of legislative intent which is

---

[2] Since we have concluded that requiring resort to the FDAB does not limit the circuit court's jurisdiction, it is unnecessary to examine plaintiffs' constitutional challenge to "a legislative limitation on the inherent common law power of a mandamus court."

determined by a construction of the statutes. This is a legal issue, not a factual one.

■ At the outset, a matter of terminology should be clarified. The parties and the Court of Appeals at times discuss the above question in terms of "exhaustion of administrative remedies." That phrase properly applies where one seeks prematurely to obtain judicial review of or judicial intervention into the action of an agency, in this instance the FDAB, without waiting to see whether the agency will in fact take the desired action. In this case, no proceeding has been filed before the agency. Neither has there been any action taken by the agency nor is any such action pending. Plaintiffs went to court for relief not against the agency but against their employer, and the issue before us is not whether the administrative process has been exhausted but whether relief should have been requested in the original instance of the FDAB.

As a predicate to plaintiffs' contention that the Court of Appeals erred in requiring an appeal to the FDAB, plaintiffs contend that the fair dismissal law, as a remedial statute, should receive a "liberal construction" to provide procedural fairness to tenured administrators. Assuming this is so, it is not clear how the argument affects the decision whether the agency or the court in the original instance should construe the statutes. Presumably, both court and agency are capable of a liberal construction if that is required.

Plaintiffs argue that to require an appeal to the FDAB in the present situation is not consistent with the plain language of the statutes. They urge that the most reasonable construction is that the legislature did not intend to require an administrator to appeal dismissal or demotion to the FDAB where the procedural prerequisites of ORS 342.895[3] have not been

---

[3] "Procedure for dismissal of permanent teacher. (1) Authority to dismiss a permanent teacher is vested in the district school board subject to the provisions of the fair dismissal procedures of ORS

met. That statute requires (1) that the superintendent give the teacher (administrator) 20 days' written notice by certified mail of his intention to make a recommendation to the school board to dismiss (demote) which sets forth the statutory grounds for dismissal (demotion); (2) that a copy of ORS 342.200 and 342.805 to 342.955 (substantially the entire fair dismissal law) shall be sent to the teacher (administrator); (3) that notice of the school board's action must be sent by certified mail to the teacher (administrator). ORS 342.905(1)[4] further provides that the teacher (administrator) has five days[5] from the receipt of the notice of the school board's decision in which to appeal to the FDAB. Plaintiffs make two different observations in support of their contention. First, they

342.200 and 342.805 to 342.955 and only after recommendation of the dismissal is given to the district school board by the superintendent.

"(2) At least 20 days before recommending to a board the dismissal of the permanent teacher, the district superintendent shall give written notice to the permanent teacher by certified mail of his intention to make a recommendation to dismiss the teacher. The notice shall set forth the statutory grounds upon which the superintendent believes such dismissal is justified, and shall contain a plain and concise statement of the facts relied on to support the statutory grounds for dismissal. If the statutory grounds specified are those specified in paragraph (a), (c), (d), (g) or (h) of subsection (1) of ORS 342.865, then evidence shall be limited to those allegations supported by statements in the personnel file of the teacher on the date of the notice to recommend dismissal, maintained as required in ORS 342.850. Notice shall also be sent to the district school board and to the Fair Dismissal Appeals Board. A copy of ORS 342.200 and 342.805 to 342.955 shall also be sent to the permanent teacher.

"(3) The action of the district superintendent takes effect on the 20th day after notice is given the permanent teacher as required in subsection (2) of this section, if approved by the district school board. Notice of the board's action shall be given to the permanent teacher by certified mail."

[4] "(1) If the district school board dismisses the teacher, the teacher may appeal that decision to the Fair Dismissal Appeals Board established under ORS 342.930 by filing with the Superintendent of Public Instruction within five days after receipt of notice of the district school board's decision, notice of appeal with a brief statement giving the reasons for the appeal."

[5] The time has subsequently been lengthened to 10 days by Oregon Laws 1977, ch 223, § 1.

state that the language used for the appeal procedure makes specific reference to action which must be taken by the district superintendent before a teacher's appeal rights ripen. Compare ORS 342.905(1) with ORS 342.895(2) and (3). Second, they state that the statute contemplates FDAB review of a superintendent's recommendation which contains the statutory grounds cited as the reasons for the demotion and the facts relied on in support of the reasons given. ORS 342.905(5), (6) and (7).[6] Consequently, according to

---

6  "* * * * *.

"(5) When the Fair Dismissal Appeals Board panel has completed its hearing, it shall prepare a written report and send it to the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Insruction. The report shall contain its finding as to whether or not the facts relied on to support the recommendations of the district superintendent are true and substantiated and if true and substantiated, whether or not they are adequate to justify the statutory grounds cited as reasons for the dismissal. The panel shall prepare the report within 30 days from the final adjournment of the hearing. However, when the panel finds that because of unusual circumstances justice requires that a greater time be spent, it shall so notify the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. The extension shall not be beyond 30 days from the date of the notice of extension.

"(6)(a) Subject to paragraphs (b) and (c) of this subsection, if the Fair Dismissal Appeals Board panel finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal, and so notifies the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction, the teacher shall be reinstated and the teacher shall receive his salary for the period between the effective date of the dismissal and the date of the order reinstating him.

"(b) If the teacher was suspended prior to the effective date of dismissal, he shall also receive his salary for the uncompensated period of the suspension.

"(c) So long as the right of the district board under subsection (8) of this section and under ORS 183.480 and 183.500 to judicial review of the action of the Fair Dismissal Appeals Board remains unexpired, the district school board may withhold the reinstated teacher from performance of teaching duties, unless otherwise ordered by the court having jurisdiction of the appeal.

"(7) If the Fair Dismissal Appeals Board panel finds the facts relied on to support the recommendation of the district superintendent true

plaintiffs, under the language of the statute the FDAB has nothing to review where the school district denies the applicability of the Act and the superintendent's notice is not given to the teacher, and under such circumstances it cannot conduct the hearing provided by ORS 342.905(4) or make the finding provided for in ORS 342.905(5). Plaintiff also points out that ORS 342.905(6)(a) only authorizes the FDAB to reinstate a dismissed (demoted) teacher (administrator) if it finds

"that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated, or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal."

In summary, plaintiffs' arguments contend that the failure of the superintendent to give written notice in compliance with the statute "encumbers effective review by the FDAB and frustrates the purpose of the Act." They suggest that because of the nature of the hearing contemplated, and the negative impact that failure to give notice will have on that hearing, the legislature could not have intended to require appeal to the FDAB where the school district has not complied with ORS 342.895. They adopt the position that a construction of the fair dismissal law leads to the conclusion that the FDAB can only reinstate for substantive error and not procedural error, and therefore the legislature did not intend the FDAB to hear appeals where no notice is given.

However, as the Court of Appeals noted, plaintiffs have failed to explain ORS 342.915(3), relating to hearing procedures on appeal to the FDAB, which suggests that the legislature intended the FDAB to review both substantive and procedural issues arising

and substantiated, and that those facts justify the statutory grounds cited as reason for the dismissal and so notifies the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction in writing, the dismissal becomes final on the date of the notice.

"* * * * *."

under the fair dismissal law, regardless of whether a school district complies with the requirements of ORS 342.895. ORS 342.915 applies to any hearing conducted pursuant to ORS 342.905. ORS 342.915(3) states:

> "At the hearing the permanent teacher shall have the right to be present and to be heard, to be represented by counsel and *to present through witnesses any competent testimony relevant to the issue of* whether facts as found by the Fair Dismissal Appeals Board and as relied on to support the recommendation of the district superintendent are true and substantiated and whether those facts justify the statutory grounds cited as reason for the dismissal and *whether the procedures required by law have been followed.*" (Emphasis added.)

Despite plaintiffs' contentions, it would not make any sense for this court to hold that the legislature intended to provide for the taking of testimony concerning whether the procedural steps have been complied with, while intending that the agency be impotent to do anything about such deficiencies if it found them to exist. Taking into consideration the language of ORS 342.915(3), it is more logical to say that the legislature intended the FDAB to have the authority to direct reinstatements, if procedures designed to protect the administrator have not been followed, until such time as the protection of the procedures is given. This conclusion is reinforced by our realization that, unless absolutely necessary, no statute should be construed to limit an administrative agency's power of review solely to substantive matters since bifurcation of the authority and process of review on a substantive-/procedural basis is an invitation to complete shambles. We conclude that the language of the statute does require that any claim by an administrator that he is entitled to reinstatement for failure to comply with the procedural prerequisites of ORS 342.895 be first addressed to the FDAB.

■ Plaintiffs argue that further support for plaintiffs' construction may be found in the FDAB's rules. The

FDAB rules provide that the hearing to which a teacher is entitled by virtue of an appeal

> "* * * is intended *solely* for the purpose of receiving evidence to determine whether or not the facts relied on to support the recommendations of the district superintendent are true and substantiated, and, if true and substantiated, whether or not they are adequate to justify the statutory grounds cited as reasons for the action." (F.D.A.B. Rules 3-003 (March 4, 1975).) (Emphasis added.)

Plaintiffs view this as meaning the FDAB did not contemplate a formal hearing to review a contested school board action where the applicability of the Act is denied and the statutory prerequisites of notice and a statement of reasons are not given by the school board. Plaintiffs contend the FDAB's construction of its enabling act is entitled to some weight. So it is. On the other hand, if it is reasonably clear that it was the intent of the legislature that the FDAB have the task of protecting a teacher's procedural rights, the FDAB cannot promulgate a rule denying its responsibility for providing such protection. It is the court's conclusion that the FDAB's rule does not swing the balance in favor of initial court interpretation concerning whether the lack of procedural prerequisites by the school board entitles a demoted administrator to reinstatement.

■ Plaintiffs contend that the Court of Appeals' decision encourages school districts to ignore the provisions of the fair dismissal law. By holding that the statutory notices are not necessary to ripen appeal rights to the FDAB, the Court of Appeals allegedly encourages school boards not to give the required notice or to inform the affected administrator of his or her rights under the Act. However, this overlooks the fact that the FDAB may reinstate the administrator to his position until such time as the school board complies with the procedural requirements.

■ Plaintiffs assert that the meaning of "a lower paying position" in former ORS 342.845(2) is a pure

question of law and contend that agency expertise of the FDAB is irrelevant to the construction of this language. In their opinion an interpretation of this phrase by the FDAB will not assist a reviewing court or contribute significantly to its reaching a correct result, and, therefore, the court is in as good a position to construe the language now as it ever will be. It should be noted that what is prohibited is a transfer to a lower paying *position.* This language may have all sorts of implications and special meaning in the hierarchy of school systems of which judges are innocent. This does not mean that ultimately it will not be proper for the courts to construe this language, but only after the administrative proceeding has run its course and the agency has had an opportunity to construe the language and to give it such specialized meaning as it may have in the context in which it was used. If such occasion arises, the courts will, in arriving at their conclusion, examine the agency construction of the language and the bases it has given for any specialized meaning.

Next, plaintiffs take special exception to that part of the Court of Appeals' opinion which states as follows:

> "Having concluded that the plaintiffs' remedy lies with an appeal to the Board, we must necessarily consider what constitutes a timely appeal in this situation. This involves deciding when the appeal period starts to run and the length of time for appeal.
> "We conclude that where a school district fails to comply with the provisions of ORS 342.845 in transferring a tenured administrator, the legislature intended that the appeal time starts to run when an administrator receives actual notice of the school district's action effecting the transfer, and by analogizing to ORS 342.905(1), which is jurisdictional, we conclude that the legislature intended that the period of time in which to appeal is the same as is provided for in the general statutory scheme, namely, five days." 32 Or App at 391.

Plaintiffs contend that because the statutory written notice to them of their demotion was not given them, the court should not have ruled that their time of appeal to the FDAB has elapsed. Plaintiffs are correct in contending that the Court of Appeals should not have so ruled but for a different reason. Consistent with its ruling that the administrative agency should first be given an opportunity to construe the statute, the Court of Appeals should have held that whether the time for appeal to the FDAB has elapsed was also a question for the FDAB and at this stage of the proceeding not a proper subject for the court's consideration. There may be all sorts of reasons why the FDAB might legitimately find it proper still to allow plaintiffs to appeal to it despite plaintiffs' actual knowledge of their demotions. As an illustration, the statute requires that they be served with a copy of the fair dismissal law. This requirement is obviously designed, among other things, to inform demoted or discharged administrators of their appeal rights. This was not done. The FDAB should be given an opportunity to construe the procedural provisions, taking into consideration the employer-employee relationship in the school context, and to decide whether plaintiffs' appeal time has elapsed despite the school board's failure to comply with the statutory procedural protections.

The action of the Court of Appeals in dismissing the mandamus proceeding is affirmed; however, that part of its holding which purports to rule that plaintiffs' time for appeal to the FDAB has elapsed is set aside.