Argued and submitted September 29, affirmed November 17, 2021

Philip RAGAWAY,
an individual;
J A Atwood Corporation, an Oregon corporation;
Spot Properties, LLC, an Oregon limited liability company;
JSP Investments, LLC, an Oregon limited liability company;
Concept Entertainment - Two, LLC, an Oregon limited
liability company, dba Duke's Country Bar and Grill;
Concept Entertainment - Four, LLC, an Oregon limited
liability company, dba Dixie Tavern;
Daniel Lenzen, an individual; Divine Comedy, LLC,
an Oregon limited liability company, dba Dante's;
Glitz, LLC, an Oregon limited liability company,
dba Star Theater; and Does 1-100,
*Plaintiffs-Appellants,*

*v.*

CITY OF PORTLAND,
an Oregon municipal corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
17CV41675; A172095

504 P3d 79

Plaintiffs are building owners and operators in Portland who installed sprinkler systems as a result of the city's adoption of an ordinance in 2013 that mandated automatic fire sprinkler systems in existing nightclubs with an occupant load of more than 100 persons. In 2017, they filed this action alleging claims for declaratory relief, quasi-contract, impairment of contract, negligence, and intentional interference with contractual relations; the crux of their complaint is that Oregon's state building code governs when and where sprinklers must be installed, thereby preempting any city ordinance that attempts to impose additional sprinkler requirements. The trial court dismissed their claim for declaratory relief based on the doctrine of common-law exhaustion, reasoning that plaintiffs were required to first raise the preemption issue in an appeal to the Portland Fire Code Board of Appeals, and it granted summary judgment on plaintiffs' four remaining claims based on substantive arguments independent of the merits of the preemption question. On appeal, plaintiffs argue that each of the adverse rulings on their claims was erroneous. *Held*: The trial court did not err in concluding that plaintiffs were required to follow an administrative review process to challenge the application of the ordinance rather than wait and file a declaratory judgment action, nor did the court abuse its discretion in denying their motion to amend their complaint to plead around the exhaustion requirement. The trial court also correctly granted summary judgment on plaintiffs' remaining claims. Plaintiffs failed to create a genuine issue of material fact as to whether the city had been unjustly enriched, failed to show that an obligation of a contract was

impaired, and failed to show how the city could be liable in tort for the quintessential discretionary policy-making decision to enact the sprinkler ordinance.

Affirmed.

Eric L. Dahlin, Judge.

Daniel T. Goldstein argued the cause for appellants. Also on the briefs was Aldrich Goldstein, P.C.

Denis Vannier argued the cause and filed the briefs for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In 2013, the Portland City Council passed an ordinance that amended the city's fire code to mandate that all existing nightclubs in the city with an occupant load of more than 100 persons have automatic fire sprinkler systems. Plaintiffs are building owners and operators in Portland who installed sprinkler systems as a result of the ordinance. In 2017, they filed this action alleging various claims arising out of the city's enactment and enforcement of the sprinkler ordinance, including claims for declaratory relief, quasi-contract, impairment of contract, negligence, and intentional interference with contractual relations. The crux of their complaint is that Oregon's state building code governs when and where sprinklers must be installed, thereby preempting any city ordinance that attempts to impose additional sprinkler requirements. *See* ORS 455.040 (providing that "no municipality shall enact or enforce any ordinance, rule or regulation relating to the same matters encompassed by the state building code but which provides different requirements unless authorized by the Director of the Department of Consumer and Business Services"). According to plaintiffs, the city knew that such an ordinance was preempted under ORS 455.040 but enacted and enforced one anyway, thereby resulting in economic damage to them.

The city responded with both procedural and merits-based defenses. The city argued that the ordinance was not preempted but that, in any event, plaintiffs were required to raise their challenges sooner and in a different forum—specifically, before the city's Fire Code Board of Appeals (FCBA)—and that, even if the ordinance was preempted, the claims failed for other reasons. Plaintiffs, for their part, moved for partial summary judgment on the merits of the preemption question.

The trial court ultimately agreed with the city that each of plaintiffs' claims failed. It granted the city's motion to dismiss the claim for declaratory relief based on the doctrine of common-law exhaustion, reasoning that plaintiffs were required to raise the issue before the FCBA, and it later denied plaintiffs' motion to amend their complaint to

plead around that doctrine. And, although the court agreed with plaintiffs on the merits of the preemption issue and granted their motion for partial summary judgment, it nonetheless concluded that the city was entitled to summary judgment on plaintiffs' four remaining claims (quasi-contract, impairment of contract, and the two tort claims) based on substantive arguments independent of the merits of the preemption question. Plaintiffs now appeal, arguing that each of the adverse rulings on their claims was erroneous; the city cross-assigns error to the court's ruling on the preemption issue. We affirm the trial court's judgment in favor of the city as to each of plaintiffs' claims, obviating the need to address the city's contingent cross-assignment of error.

## I.  BACKGROUND

This is the second time that we have addressed issues arising from the city's enactment of the sprinkler ordinance. In *City of Portland v. Building Codes Div.*, 313 Or App 93, 496 P3d 1108 (2021), we described the enactment history of the ordinance, as well as the overlay of the statutory and regulatory schemes involving the state building code and state fire marshal statutes. For purposes of our resolution of the issues on appeal, it is not necessary to repeat that context in full. Rather, we begin with a brief overview of the parties' dispute and discuss the pertinent facts in greater detail within particular assignments of error.

The state building code establishes requirements for fire protection systems, including automatic sprinkler systems, in certain new buildings and structures, but the building code generally does not require retrofitting of existing buildings that were up to code at the time they were built. In 2013, the City of Portland was concerned about the potential for catastrophic nightclub fires in existing buildings that were not required to be equipped with automatic sprinkler systems. However, city officials were cognizant of the fact that Oregon law prohibits municipalities from imposing building code requirements without authorization from the Oregon Building Codes Division (BCD). *See* ORS 455.040(1). So, rather than seek authorization for a code

change regarding sprinkler systems, they proposed an ordinance that imposed fire sprinkler requirements as part of the city's fire code, not its building code.

The sprinkler ordinance, which the city adopted in September 2013, required automatic sprinkler systems to be installed in all existing nightclubs with an occupant load greater than 100, and it gave nightclubs with an occupant load of 200 or more until December 31, 2014, to comply. Nightclubs with an occupant load of 101 to 199 were required to comply no later than June 30, 2015. The ordinance further provided:

> "Any person, owner or occupant subject to the requirements of [the amendment to the fire code] may submit an appeal for a modification pursuant to Portland Fire Code 104.8 and in the manner provided by Portland City Code 31.10.080 [for appeals to the FCBA]."

Plaintiffs complied with the ordinance by installing sprinklers, incurring costs for permits and installation. None of them filed an appeal with the FCBA.

Meanwhile, in 2014, the BCD began investigating the city's enactment of the ordinance—specifically, whether the city's ordinance was unlawful because it was preempted by the state building code. Eventually, in April 2016, the BCD issued an investigative report concluding that the ordinance was unlawful; it followed that with a notice of proposed order for corrective action and fines in July 2017. (That order was the subject of our recent decision in *City of Portland*, 313 Or App 93, in which we held that the BCD did not have the broad enforcement powers that it claimed with regard to the enactment of local ordinances.)

In September 2017, plaintiffs filed this action. Their operative complaint included five claims for relief: (1) declaratory relief; (2) quasi-contract; (3) "constitutional violations" (which ultimately narrowed to an impairment-of-contract count); (4) negligence; and (5) intentional interference with economic relations. In allegations common to all of those claims, plaintiffs alleged that the city unlawfully enacted the ordinance with awareness that the state building code governed installation of sprinklers in buildings, that the

city lacked authority to enact any sprinkler ordinance that deviated from the building code without express approval from the BCD, and that it could not require retrofits on existing buildings when they are not under construction, reconstruction, alteration, or repair. According to plaintiffs, it was not until June 2016, when they became aware of the investigative report from the BCD, that they first discovered that the city's "action of adopting and enforcing the Retroactive Sprinkler Ordinance and the related policies, rules, and procedures were contrary to Oregon Law." And, they alleged, it was at that point that they provided notice of their claims to the city under the Oregon Tort Claims Act (OTCA).

After plaintiffs filed their operative complaint, the city moved to dismiss the claims on the basis of common-law exhaustion, arguing that plaintiffs were required to pursue an appeal before the FCBA; the city also moved to dismiss on a number of grounds that touched on the merits of the various claims, including the fundamental question whether the sprinkler ordinance was preempted by state law. The trial court granted the city's motion to dismiss on exhaustion grounds only with regard to the claim for declaratory relief. It otherwise concluded that common-law exhaustion did not bar the remaining claims; that the city's arguments on the merits of the preemption issue were wrong; and that the rest of the issues presented in the city's motion to dismiss were better resolved at the summary judgment stage after development of the record.

In the wake of that ruling, plaintiffs sought to turn the court's denial of the city's motion into an affirmative ruling in their favor. They filed a motion for partial summary judgment, explaining that "[t]he Court has already correctly ruled that ORS 455.040 preempted City enactment of Ordinance No. 186247, which ruling this Court made during consideration of the City's Motion to Dismiss. Plaintiffs now seek an express ruling of the inevitable result: that Ordinance No. 186247 is not valid."

The city, on the other hand, filed a motion for summary judgment on the claims that had survived the motion to dismiss. At a hearing on those motions in April 2019, the

trial court provided alternative rulings on many of the issues that were before it, in the event that issues were taken up on appeal. During the hearing, the court indicated that it was granting plaintiffs' partial summary judgment motion on preemption but also granting the city's motion for summary judgment on each of plaintiffs' four remaining claims for relief for independent reasons. Then, after the court's oral ruling but before a judgment had been signed, plaintiffs filed a motion to amend their complaint to add new allegations about a representative of the city impeding the ability of one of the plaintiffs to file an administrative appeal—allegations that were intended to bring that plaintiff within an exception to the common-law doctrine of exhaustion. The court denied the motion to amend, explaining that "this isn't just a mere pleading issue, it's injecting new facts, after Summary Judgment, after I ruled on Summary Judgment." Thereafter, the trial court entered the judgment that plaintiffs now appeal.

## II.   ANALYSIS

Plaintiffs' appeal raises three assignments of error. The first is directed at the trial court's "refus[al] to issue a declaratory judgment invalidating the Ordinance"; the second is directed at the court's grant of summary judgment on plaintiffs' "non-tort claims of impairment of contracts and unjust enrichment"; and the third is directed at the court's grant of summary judgment on plaintiffs' tort-based claims. The city raises a single cross-assignment of error directed at the court's ruling on the merits of the preemption issue. In addressing the various assignments, we proceed with a claim-by-claim discussion and then address why we are not reaching the cross-assignment of error.

### A.   *First Claim: Declaratory Relief*

Plaintiffs' declaratory judgment claim sought a declaration that the city's enactment and enforcement of the sprinkler ordinance was unlawful in various respects, including that it violated ORS 455.040(1), ORS 455.020, and the contract clause of the Oregon Constitution; that its enforcement had been "uneven, unfair, unpredictable, arbitrary, capricious, without substantial reason, and outside its

delegated authority and discretion"; and that it "violate[d] the applicable rulemaking procedures and requirements under city and state law and is beyond the City's inherent police power."

In its motion to dismiss, the city argued that plaintiffs failed to exhaust their administrative remedies before pursuing declaratory relief, improperly sought retrospective rather than prospective relief on that claim, and could not prevail on the merits in any event, because the ordinance was not preempted or otherwise unlawful. The trial court agreed with the city that the declaratory relief claim was barred by the doctrine of common-law exhaustion, but it otherwise denied the city's motion to dismiss.

On appeal, plaintiffs argue that the trial court misapplied the doctrine of common-law exhaustion. That doctrine, which the Supreme Court described in *Miller v. City of Portland*, 356 Or 402, 419-20, 338 P3d 685 (2014), applies

> "'where one seeks prematurely to obtain judicial review of or judicial intervention into the action of an agency * * * without waiting to see whether the agency will in fact take the desired action.' *Zollinger v. Warner*, 286 Or 19, 25, 593 P2d 1107 (1979). That doctrine, insofar as applicable here, is judicially created. *See* Richard J. Pierce, Jr., 2 *Administrative Law Treatise* § 15.2, 1219-20 (5th ed 2010) (distinguishing common-law exhaustion requirement from statutory exhaustion requirement); * * * The exhaustion requirement—at least in its common-law variant—is 'not rigid but flexible' and is intended to promote 'orderly procedure and good administration.' *Marbet v. Portland Gen. Elect.*, 277 Or 447, 456, 561 P2d 154 (1977) (internal quotation marks and citations omitted); *see also* Pierce, 2 *Administrative Law Treatise* § 15.2 at 1219 (common-law exhaustion requirement 'is flexible and pragmatic')."

*Accord Tuckenberry v. Board of Parole*, 365 Or 640, 646, 451 P3d 227 (2019) ("The general doctrine of exhaustion of administrative remedies is judicially created, a creature of the common law, and is employed by the courts * * * in the interest of orderly procedure and good administration. * * * It generally holds that judicial review is only available after the procedure for relief within the administrative body

itself has been followed without success." (Internal quotation marks and citation omitted.)).

Although the exhaustion requirement is flexible and highly case specific, certain broadly applicable principles can be gleaned from Oregon cases summarizing the doctrine. In *Marbet*, 277 Or at 456, the court explained that the doctrine "most obviously" applies in the case of a party seeking judicial review whose license or individual rights, duties, or privileges "are the occasion of the contested case," but "is less obviously applicable" when the agency's action is challenged as based on an unconstitutional statute or a rule that was invalid under the constitution, exceeded agency authority, or was adopted without compliance with applicable rulemaking procedures, "for these are legal flaws *which the agency could not remedy in the contested case.*" (Emphasis added.) *Marbet* further states, "Indeed, this court has dispensed with the 'exhaustion' requirement entirely in one such case,"[1] and "[t]here can be other justifications for considering on judicial review important statutory issues not first decided by the agency, * * * especially when correct administration of the statute concerns public interests beyond those of the parties." 277 Or at 456.

In their first assignment of error, plaintiffs argue that an exhaustion requirement does not serve the orderly administration of justice in this case. Specifically, they contend that the preemption issue that is the subject of this action involves a power struggle between the city and the state that is beyond the purview and expertise of a local board like the FCBA and, in any event, requires a remedy that the FCBA is not authorized to provide—*i.e.*, overturning the city's sprinkler ordinance.

With regard to the purview and expertise of the FCBA, it is true that the board is not made up of lawyers trained to resolve legal questions like preemption. However, the same can be said of many local boards with regard to

---

[1] *See Sunshine Dairy v. Peterson*, 183 Or 305, 345, 193 P2d 543 (1948) ("The rule requiring plaintiff to exhaust his administrative remedies before resorting to the court has no application when the attack upon the administrative order is based upon the contention that the administrative body is without statutory power to issue the order.").

many legal issues. And, in this case, the local board may well have relevant experience with the building code and its reach, the board could develop a factual record to facilitate judicial review, and any decision by the board would be subject to judicial review through the writ of review process based on the record created before the board. *See, e.g., Landsing Prop. v. City of Portland Fire Code Board*, 94 Or App 154, 156, 764 P2d 616 (1988) (involving the appeal of a judgment on a writ of review, affirming an order by the City of Portland Fire Code Board of Appeals that the petitioner's building be equipped with a sprinkler system throughout the entire building within 10 years). We therefore disagree with plaintiffs' argument that the FCBA by its nature is too ill-equipped for such review to further orderly procedure and administration of justice.

Plaintiffs' main contention, and the one that became the focus in the trial court, is whether the FCBA is empowered to invalidate the city's sprinkler ordinance.[2] Plaintiffs asserted before the trial court:

"Certainly, those who are under some sort of an Order by the Fire Marshal, who want an expedited way to get that Order heard, go straight to the Fire Code Board of Appeals. That's not this. We want the ordinance stricken. Fire Code Board of Appeals does not serve that purpose.

"* * * * *

"It's unclear from the language of the ordinance itself, 310.10.080. Certainly nothing in that ordinance expressly gives the Fire Code Board of Appeals authority to overturn a City action. That would be completely upside down. Fire

---

[2] Plaintiffs argued below:

"The Fire Code Board of Appeals, as a body, wouldn't have had authority to declare the City's action unlawful. *That's the core of this dispute. There would have been no point in taking this to the Board of Appeals and saying, yes, we completely agree that on the face of the statute we have an obligation to comply.*

"* * * * *

"* * * *And there's an express exemption within the common law exhaustion of remedies doctrine for situations where the administrative body cited would not have had authority to take the action sought here.* And that's exactly what we're talking about. It would have simply added costs."

(Emphases added.)

Code Board of Appeals exists within the City. Fire Marshal works for the City. The Fire Code Board of Appeals works for the City.

   "*The Fire Code Board of Appeals can't overturn City action. That's not the way the structure of, as I understand it, the City governance is intended to work.*"

(Emphasis added.)

   The city disagreed, asserting that the FCBA was authorized, like state regulatory agencies, to determine that the sprinkler ordinance was unlawful, which would then be subject to judicial review. The city argued that the FCBA has "the authority * * * to make that determination. And then, in that instance, the City—that it would go to a Writ of Review." On appeal, and consistent with its position below, the city argues that "'Oregon administrative agencies have the power to declare statutes and rules unconstitutional,'" *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 662, 20 P3d 180 (2001), and it argues that the FCBA is no different from those administrative tribunals.

   Whether the FCBA is authorized to declare the city's ordinances invalid depends on whether the city has given such authority to the FCBA, either explicitly or implicitly. To determine whether the city has done so, we look to the provisions governing board authority in the 2014 Oregon Fire Code, which the parties agree had been adopted by the city at the relevant time. It provides:

   "**108.1   Board of appeals established**. In order to hear and decide appeals of orders, decisions or determinations made by the fire code official relative to the application and interpretation of this code, there shall be and is hereby created a board of appeals. The board of appeals shall be appointed by the governing body and shall hold office at its pleasure. The fire code official shall be an ex officio member of said board but shall have no vote on any matter before the board. The board shall adopt rules of procedure for conducting its business, and shall render all decisions and findings in writing to the appellant with a duplicate copy to the fire code official. Also see ORS 479.180.

   "**108.2   Limitations on authority.** An application for appeal shall be based on a claim that the intent of this code

or the rules legally adopted hereunder have been incorrectly interpreted, *the provisions of this code do not fully apply*, or an equivalent method of protection or safety is proposed. *The board shall have no authority to waive requirements of this code*."

(Boldface in original; emphases added.)

Plaintiffs offer two arguments as to why, under those provisions, the FCBA lacked authority to determine that the sprinkler ordinance was preempted. First, they argue that invalidating the ordinance would not be based on a claim that "the provisions of this code do not fully apply" or any of the other bases listed in Fire Code 108.2 for an appeal. We disagree. The most plausible interpretation of the provision is the one that the city offers: that the board has authority to determine that some provisions of the code are inapplicable, whether because they do not apply as a factual matter *or as a legal matter*, which would encompass a determination that the provisions are preempted (or unconstitutional or otherwise unlawful to apply). As the city points out, that interpretation would be consistent with the powers that administrative boards in Oregon are generally understood to wield in a quasi-judicial capacity. *See, e.g.*, *Outdoor Media Dimensions Inc.*, 331 Or at 662 (describing the power of Oregon administrative agencies to declare statutes and rules unconstitutional).

Plaintiffs' remaining argument is that the last sentence of Fire Code 108.2 precludes the FCBA from determining that an ordinance is preempted, because it expressly deprived the FCBA of authority to "waive requirements of this code." But, as the trial court correctly observed, a "waiver" is distinct from a determination that a code provision is unlawful. To "waive" a requirement is to give up the right to enforce that requirement. *See Webster's Third New Int'l Dictionary* 2570 (unabridged ed 2002) (defining "waive" in this context to mean "to refrain from pressing or enforcing (as a claim or rule) **:** dispense with **:** forgo <~ a portion of the tax due> <~s his opposition to the bill> <~ the customary formalities> <*waived* the club rules to admit him>"). In the context of an unlawful requirement, there is no such right to be "waived"; it cannot lawfully be enforced.

For those reasons, we are not persuaded by plaintiffs' arguments that the trial court erred in concluding that they were required to follow an administrative review process to challenge the application of the ordinance to their buildings rather than wait and file a declaratory judgment action.[3]

Plaintiffs argue, in the alternative, that they should have at least been permitted to amend their complaint to plead that the city interfered with their ability to seek administrative review after they "presented evidence to the trial court regarding the City's actions in dissuading at least one plaintiff from exercising formal appeal rights before the FCBA." Specifically, they sought to add the following allegation:

"After the City enacted the illegal ordinance, Frank Faillace, a co-owner of Glitz, LLC and Divine Comedy, LLC asked the City Fire Marshal about an appeal process for the Retroactive Sprinkler Ordinance. Mr. Faillace was told to give the City Fire Marshal a proposed plan and that he would run it by whoever was in charge. Two weeks later, Mr. Faillace was notified that his appeal was denied. Mr. Faillace asked about any further appeal process, and was told that there was no other appeal process."

According to plaintiffs, that evidence would have brought them (or at least one of them) within the exception to the exhaustion doctrine that was identified in *Miller*, in which the court declined to apply the common-law doctrine of exhaustion where the agency's interim director had misled the plaintiff about the administrative review process. 356 Or at 420.

---

[3] We note that the claim for declaratory relief includes some allegations concerning ongoing or prospective harm from the ordinance, including that "[t]he City is continuing and expanding unlawful enforcement and engaging in retaliatory action and harassment." However, plaintiffs did not sufficiently develop any argument below or on appeal as to why, if justiciable, those allegations would not be capable of being exhausted before the FCBA. In fact, plaintiffs do not refer to the ongoing harms or requests for prospective relief anywhere in their appellate briefing regarding exhaustion. Accordingly, we do not address those allegations as part of our analysis. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) (explaining that we will not speculate as to what a party's argument might be and that it is not "our proper function to make or develop a party's argument when that party has not endeavored to do so itself").

We review the denial of a motion to amend for abuse of discretion. *C.O. Homes, LLC v. Cleveland*, 366 Or 207, 215, 460 P3d 494 (2020). "[T]he gravamen of the inquiry is whether allowing a pretrial amendment would unduly prejudice the opposing party," and "[i]n evaluating whether such prejudice exists, a court considers factors such as whether the party opposing the motion had a reasonable opportunity to research appropriate law, move against the pleading, avail [himself or her]self of discovery procedures, and prepare requested instructions." *Id.* at 216 (internal quotation marks omitted). "'Generally, the further a case proceeds, the more reluctant the courts are to permit amendments.'" *Id.* (quoting *Perdue v. Pac. Tel. & Tel. Co.*, 213 Or 596, 606, 326 P2d 1026 (1958)); *see also Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000) (explaining that, in reviewing a motion to amend, we keep in mind that "leave shall be freely given when justice so requires" and balance four factors to determine if the court permissibly exercised its discretion: (1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendment).[4]

Considering the nature of the amendments and how late in the case the amendments were proposed, the trial court did not abuse its discretion. On September 28, 2018, at a hearing on the issue of exhaustion, the court explained that it could make a difference if this had been a case that involved the type of facts in *Miller*: "[T]he only way I think you get away from the exhaustion requirement is if the City or whatever Government agency is proactively doing something to keep the Plaintiff from filing an

---

[4] The parties briefed and argued the discretionary decision on the motion to amend based on the *Ramsey* factors and have not developed any argument that those factors are somehow inconsistent with the standard described in *C.O. Homes, LLC*. In *Deep Photonics Corp. v. LaChapelle*, 368 Or 274, 301, 491 P3d 60 (2021), one of the defendants advanced that contention, but the court ultimately concluded that it "need not determine whether the various *Ramsey* factors or the *Ramsey* test itself conflict with *C.O. Homes*." For purpose of this case, in the absence of any argument to the contrary, we are satisfied that application of the *Ramsey* factors and the approach described in *C.O. Homes, LLC* lead to the same result.

administrative action." And yet it was not until *eight months later*—after additional motions practice, including the court granting summary judgment on all of plaintiffs' remaining claims—that plaintiffs finally moved to amend their complaint, based on facts that were known to one of the plaintiffs. As the court explained, "this is information that was in the Plaintiffs' purview. This is evidence from the Plaintiff directly."

Furthermore, as the trial court observed, the potential merits of the amendment were questionable, because it would require an "extension of *Miller* to even make this a possibility"—thereby requiring further litigation of the affirmative defense. *Miller* involved a situation in which the plaintiff had followed an administrative review process set forth in a letter from the agency director—a process that was not inconsistent with the text of the rule governing the review process. 356 Or at 420-21. Here, by contrast, the plaintiffs relied on a phone conversation about "some sort of appeal" between a club owner and the fire marshal, in which the fire marshal told the owner to "give him a plan and he'd run it by whoever was in charge," followed by a further conversation in which the owner asked about "any further appeal process" and was told "that there was no other appeal process." The owner could not even recall the approximate date of that conversation. Thus, as the trial court correctly recognized, the amendment would not necessarily have resulted in any different outcome, but only further litigation of the exhaustion question that had already been decided.

Given the totality of the circumstances, we cannot say that the trial court abused its discretion in refusing to revive the case to allow an amendment of questionable merit. By the time of the motion to amend to add the allegation, the case was nearly two years old and had been litigated through dispositive motions. In that posture, the court concluded that the city would be prejudiced by a revival of the case to further litigate the exhaustion question, noting that it was unaware of any case "close to two years old, where after summary judgment has been, not only filed but granted," the parties had requested and been allowed to amend the complaint. That conclusion was within

the permissible range of the trial court's options under
ORCP 23.

B.   *Second Claim for Relief: Quasi-Contract*

Plaintiffs' second claim, captioned "Quasi-Contract—
Money Had and Received," sought recovery of "any money
received by the City from plaintiffs for fees and fines paid by
plaintiffs as a result of the unlawful enactment and enforce-
ment of the Retroactive Sprinkler Ordinance." The city
understood the claim to be based on a principle of unjust
enrichment. *See Comcast of Oregon II, Inc. v. City of Eugene*,
346 Or 238, 255-56, 209 P3d 800 (2009) (involving an action
for money had and received "asserting a theory of quasi-
contract to avoid unjust enrichment"); *Powell v. Sheets*, 196
Or 682, 699, 251 P2d 108 (1952) ("The basis of a recovery of
money upon the theory of unjust enrichment is the existence
of a quasi contract, or a contract implied by law."). The city
moved for summary judgment on the ground that there was
no unjust enrichment of the city because no fines had been
imposed and any fees had been related to installation and
maintenance of the sprinklers systems rather than directly
imposed under the ordinance.

At the summary judgment hearing, the trial court
asked plaintiffs to explain their theory, inquiring "what is
the money had and received claim?" They responded:

> "[A]s it's pleaded it relates to the monies already paid as of
> the time of the filing and those are for, and we should prob-
> ably distinguish between like the permit slash inspection
> fees and some of these, like, major water line connection
> fees which those are—there are hard costs with those.
>
> "So you're correct in your analysis that there's built-in
> overhead that goes into that that the City did receive. As to
> the other ones like the permit for installation of sprinklers
> requires that, you know, that a building inspector and a
> Fire Marshal come out and visit the property and make
> sure what you've done is correct.
>
> "And those are just salaried individuals who the City is
> spending the same amount for those as they would had we
> not had to pay those. So that's why I draw that distinction."

Based on that clarification, the court granted the motion for summary judgment, explaining:

"I understand the argument that the City was unjustly enriched because it had part of its overhead paid and it got extra money going to these overhead amounts, I just think is a factual matter; there's not a question of fact on that issue.

"*** I could envision a situation where having money *** going to the general fund or *** going to pay overhead that they had to pay for, anyway, there could be circumstances in which that would be unjust enrichment, but there's not a factual basis in this case."[5]

We affirm the trial court's grant of summary judgment based on failure of proof of any benefit conferred. As the trial court correctly observed, plaintiffs did not offer any evidence at the summary judgment stage from which a reasonable trier of fact could infer that the city made any profit through the sprinkler inspection process, and they were not able to identify specific evidence from which an inference of profit could be drawn to support their unjust enrichment theory. The trial court therefore did not err in granting the city's motion for summary judgment on the quasi-contract claim.

C.  *Third Claim: Violation of Contracts Clause*

Plaintiffs' third claim for relief alleged a violation of the contract clause of the Oregon Constitution, which provides that "[n]o *** law impairing the obligation of contracts shall ever be passed." Or Const, Art I, § 21. According to plaintiffs, "the illegal enactment of the Sprinkler Ordinance drastically changed the economic foundation of the leases between the nightclubs and their landlords by imposing the

---

[5] The city had also argued that plaintiffs, knowing all of the facts, voluntarily paid the fees instead of contesting them, bringing them within the "voluntary payment" rule. *See generally Adams v. Crater Well Drilling, Inc.*, 276 Or 789, 793-94, 556 P2d 679 (1976) ("As a general rule money which is voluntarily paid with full knowledge of facts which would excuse payment cannot be recovered. Recovery of money paid is allowed, however, where payment is made as a result of fraud, mistake, duress or coercion. The threat of a civil suit alone does not constitute duress or coercion sufficient to permit recovery of money paid to avoid the litigation." (Footnotes omitted.)). The trial court agreed with the city on that issue as well, but we need not reach the merits of that alternative ruling.

large cost of sprinkler installation which had not previously been contemplated between the parties." The trial court ruled that such generalized economic effects from an ordinance could not form the basis of a claim for impairment of contract, and that plaintiffs had pointed to "no particular contract or particular contract terms that were impaired by the ordinance as contemplated by the contract clause."

We agree with the trial court's ruling. As we recently reiterated in *Owen v. City of Portland*, 305 Or App 267, 286, 470 P3d 390 (2020), *aff'd*, 368 Or 661, 497 P3d 1216 (2021), a claim based on a violation of the contract clause requires more than an assertion that an ordinance imposes new obligations under existing contracts:

> "Here, plaintiffs have not identified contractual terms that are obligations impaired by the ordinance. *Plaintiffs baldly assert that the ordinance is facially invalid because it imposes new obligations under existing contracts. That, however, is not what Article I, section 21, prohibits. See Eckles v. State of Oregon*, 306 Or 380, 395-96, 760 P2d 846 (1988) (explaining that the United States Supreme Court distinguishes between the impairment of a contract, which may occur whenever a law enlarges, abridges, or changes the agreement, and the impairment of the obligation of a contract). *Plaintiffs make only generalized arguments, untethered to any particular contract or contractual term, and do not point to any obligation of a contract that has been impaired by the ordinance*. We thus reject plaintiffs' challenge under Article I, section 21."

(Emphases added.)

Here, as in *Owen*, plaintiffs have failed to tether their arguments to any particular contract or contractual term and do not point to any obligation of a contract that has been impaired by the ordinance. We therefore affirm the court's grant of summary judgment on plaintiffs' claim for impairment of contract.

D.    *Fourth and Fifth Claims for Relief: Tort Claims*

Plaintiffs' remaining claims were based in tort. Their fourth claim alleged that "[t]he City had a duty to exercise reasonable care in enacting and enforcing ordinances," and that "[t]he City's enactment of the illegal Retroactive

Sprinkler Ordinance and continuing and expanding unlaw-
ful enforcement, retaliatory action and harassment was
unreasonable in light of the foreseeable risk of harm to
plaintiffs." Their fifth claim alleged that "[t]he City knew
that plaintiffs had these business relationships and inter-
ests," and "[t]he City knowingly and intentionally interfered
with such relationships and prospective economic advan-
tages by implementing and enforcing the illegal Retroactive
Sprinkler Ordinance."

    The city moved for summary judgment on the ground
that the tort claims were untimely because plaintiffs had
not filed a tort claim notice within 180 days of learning that
their buildings would be affected by the ordinance (which
became effective, at the latest, on June 30, 2015); and that,
timely or not, their tort claims were barred because the city
is immune for its discretionary decision to enact the ordi-
nance.[6] The trial court agreed with the city on both of those
grounds. With regard to immunity, the court explained that
"having a good faith but mistaken belief about what the law
allows" is not enough to lose discretionary immunity, and
that plaintiffs' evidence (which showed the city's concern
about preemption and efforts to get around the problem) was
not sufficient to show a willful disregard of the law.

    We affirm the trial court's ruling on discretionary
immunity and, for that reason, need not address the timeli-
ness of plaintiffs' tort claim notice. ORS 30.265(6) provides
that "[e]very public body and its officers, employees and
agents acting within the scope of their employment or duties
*** are immune from liability for: *** (c) [a]ny claim based
upon the performance of or the failure to exercise or perform
*a discretionary function or duty, whether or not the discretion
is abused.*" (Emphasis added.) As we explained in *Ramirez v.
Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 420, 39 P3d
931, *rev den*, 335 Or 114 (2002), "[a] city would be immune
from liability for damages caused by its decision not to adopt
a taxi licensing system, but it is not immune when, having

_____

[6] The city argued, "I think when we're talking about decisions made in
the legislative function of the City Council, absent some very clear evidence to
the contrary, that is certainly them exercising a discretionary policy-making
function."

adopted a policy requiring taxi drivers to meet certain criteria before obtaining a license, one of its employees licenses a taxi driver who does not qualify, and as a result that driver causes harm. * * * *The operative distinction, then, is between choosing a course of action or inaction, on the one hand, and putting that choice into effect, on the other.*" (Emphasis added.)

The city's decision to enact the sprinkler ordinance was the quintessential discretionary policy-making decision, and plaintiffs have not explained, in any cogent way, how the city is not immune for that choice. Their argument appears to be that, because the ordinance was preempted, the city lacked any discretion to pass it.[7] That confuses the substance of the city's act with the *nature* of the act; discretionary immunity applies when the nature of the act is discretionary, even if that discretion is abused in substance. ORS 30.265(6)(c). Plaintiffs have never engaged with that aspect of the statute or the broad immunity that flows from legislative acts by a city. *Westfall v. Dept. of Corrections*, 355 Or 144, 161, 324 P3d 440 (2014) ("Once a discretionary choice has been made, the immunity follows the choice. It protects not only the officials who made the decision, but also the employees or agents who effectuate or implement that choice in particular cases."); *see generally* 18 McQuillin Mun. Corp. § 53:124 (3d ed 2021 Update) ("No liability is created against a municipal corporation by acts of its officers done under an unconstitutional or void ordinance enacted in the exercise of governmental powers, and a municipality is not liable in damages to a person arrested under a void ordinance passed in the exercise of its governmental functions." (Footnotes omitted.)); *Id.* § 53.8 ("The United States Supreme Court has affirmed the belief that local government officials are free from personal liability for voting for an ordinance. In that decision the Court held that absolute immunity attaches when a city official is voting on an ordinance within the sphere of legitimate legislative activity." (Footnote omitted.)). Accordingly, we affirm the court's grant of summary judgment on plaintiffs' tort claims.

---

[7] Below, plaintiffs argued, "So in this situation to the extent they've enacted an invalid ordinance then the discretionary immunity would go away because it's an invalid exercise by definition, invalid exercise of their authority."

### E.  *Cross-Assignment of Error*

Because we affirm the trial court's rulings as to each of the claims, we do not reach the city's cross-assignment of error regarding the trial court's grant of partial summary judgment to plaintiffs on the underlying question of preemption. The city has not cross-appealed the general judgment, and the city expressly asks this court to review the merits of the preemption question only in the event that we were to reverse with regard to one of plaintiffs' assignments of error.

Affirmed.